MINORITY BUSINESS LEGAL DEFENSE AND EDUCATION FUND, INC., Plaintiff,

v.

SMALL BUSINESS ADMINISTRATION, et al., Defendants.

Civ. A. No. 82–0788.

United States District Court, District of Columbia.

Sept. 28, 1982.

Rotan E. Lee, Philadelphia, Pa., Ralph C. Thomas, III, Washington, D.C., for plaintiff.

Judith Bartnoff, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

Plaintiff Minority Business Legal Defense and Education Fund, Inc. ("the Fund") challenges regulations promulgated by defendant Small Business Administration ("SBA") placing limits on the period of time a business may receive assistance under Section 8(a) of the Small Business Act, 15 U.S.C. § 636 *et seq.* The purpose of the 8(a) program is to promote the economic viability of small, economically disadvantaged businesses owned and controlled by members of minority racial and ethnic groups, to the point where those businesses are sufficiently strong to compete in the marketplace without government assistance. Under the program, the SBA contracts to provide goods or services to other government agencies and then subcontracts performance of these contracts to eligible firms. The regulations in question limit a firm's eligibility to participate in that procurement program to five years, with a possible two-year extension upon application to the SBA. Plaintiff challenges the regulations creating and implementing that limit on two grounds.[1] After full consideration of the parties' cross-motions for summary judgment, judgment must be granted the SBA and the complaint must be dismissed.

The Fund argues first that the SBA's regulation is void under the Adminis-

---

1. Plaintiff earlier had claimed that the regulation was also in violation of the Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq.*, but withdrew that claim at oral argument.

trative Procedure Act ("APA") as arbitrary, capricious, an abuse of discretion, or not in accordance with the language or purpose of the 8(a) statute. 5 U.S.C. § 706(2)(A).

As originally enacted, the 8(a) program did not place any limit on the time a firm could receive assistance under the program. Many firms remained in the program for years without ever "graduating" into the competitive market. Concerned that 8(a) assistance should not become an end in itself, and with the possibility that the long tenure of some firms in the program limited the number of contracts available to eligible newcomers,[2] Congress enacted Public Law 96–481 on October 21, 1980. That law amended the 8(a) provisions to require that firms could participate in the program only

> within a fixed period of time as mutually agreed upon by the applicant and the [SBA] Administrator prior to acceptance in [the] program: *Provided,* That not less than one year prior to the expiration of such period, and upon the request of such concern, the Administration shall review such period and may extend such period as necessary and appropriate.

15 U.S.C. § 636(j)(10)(A)(i) (emphasis in original).

Section 106(b) of Public Law 96–481 also directed the SBA to promulgate final regulations regarding time limits on 8(a) assistance. 94 Stat. 2322 (1981). In response to this statutory responsibility for fixing an appropriate "graduation date" for Section 8(a) participants, the SBA promulgated the regulation here at issue. 13 C.F.R. § 124.1–1(f). That regulation requires firms participating in the 8(a) program to negotiate with the SBA a "Fixed Program Participation Term" ("FPPT"), which determines how long the firm will be eligible to receive 8(a) contracts before being automatically terminated from the program. The regulation outlines the negotiation procedure and the criteria to be considered in selecting an appropriate FPPT for each concern that applies. In addition, the regulation provides that the maximum FPPT available to any firm is five years, and that not less than one year prior to the expiration of its FPPT, a firm can request the SBA to extend 8(a) assistance for a period not to exceed the difference between the original FPPT and five years, plus two years. The regulation precludes any further extensions. It is this seven-year "ceiling" on 8(a) participation, and not the imposition of a negotiated FPPT itself, that the Fund seeks to challenge.

The Fund argues that 13 C.F.R. § 124.1–1(f) is void because Public Law 96–481 does not explicitly authorize the SBA to set a ceiling on the amount of time that any firm, regardless of type, can receive contracts under the program. But nothing in Public Law 96–481 precludes the SBA from setting such a ceiling. The Small Business Act grants the SBA broad discretionary authority to promulgate rules and regulations necessary to effectuate the purposes of the Act. 15 U.S.C. § 634(b)(6); *Duke City Lumber Co. v. Butz,* 382 F.Supp. 362, 370 (D.D.C.1974), *aff'd in relevant part,* 539 F.2d 220 (D.C.Cir.1976), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977). Public Law 96–481 expressly directs the SBA to promulgate regulations setting time limits on 8(a) participation. 94

**2.** *See, e.g.,* remarks of Senator Morgan in S.Rep. No. 974, 96th Cong., 2d Sess. (1980) at 22: "[I]t appears to many of us in the Congress that participants in this particular Government procurement program seldom appear to move on to regular Government procurement programs or, indeed, to simply compete in the private sector, which is the ultimate goal of the law.

"It has not been the goal of the program to keep certain firms on Government contracts forever.... The continued participation of a few firms, in the absence of some compelling need, only injures those other small business-

men who could enter the marketplace through the 8(a) program."

Congressional concern was sparked, in part, by a Comptroller General's report entitled "The SBA 8(a) Procurement Program—A Promise Unfulfilled." (CED 81–55, April 8, 1981, at 6). The report stated that "the program has done too much for too few for too long. About $1.7 billion, or 31 percent, of the total 8(a) contract support has gone to fifty [50] active firms. Three-fifths of these firms have been in the program between 7 and 11 years and seem to have no incentive to leave the program's umbrella."

Stat. 2322 (1981). Under the circumstances, the imposition of a general maximum applicable to all firms is well within the SBA's discretion. "[T]he breadth of agency discretion is, if anything, at zenith when the action assailed relates primarily not to the issue of ascertaining whether conduct violates the statute, or regulations, but rather to the fashioning of policies, remedies and sanctions." *Niagra Mohawk Power Corp. v. FPC,* 379 F.2d 153, 159 (D.C.Cir.1967).

The Fund next suggests that the SBA's unilateral imposition of a ceiling on FPPTs is contrary to the requirement of Public Law 96–481 that the time period fixed for receiving 8(a) contracts be "mutually agreed upon" by SBA and the 8(a) participant. The seven-year ceiling does place some outside limits on the negotiation process. But under 13 C.F.R. § 124.1–1(f), the 8(a) applicant and the SBA can mutually agree upon an original FPPT of anywhere from one to five years; this period can then be extended, upon application, to as much as seven years. The length of the period is determined by criteria in the regulation designed to determine the degree of assistance needed to make the firm viable. More than enough room is preserved for flexibility and negotiation and the regulation is well within the language and intent of the statute.

The Fund also relies upon the purpose of the 8(a) program to "promote the competitive viability of [participating] firms by provid[ing] such . . . assistance as may be necessary." 15 U.S.C. § 631(c)(2)(B)(ii). While the Fund concedes that in many cases seven years of 8(a) assistance is sufficient to enable a small business to compete effectively in the marketplace, they urge that in some cases, more than seven years is necessary for a business to reach competitive viability. In such cases, they argue, the imposition of a seven-year ceiling is contrary to the statute's intent that eligible firms receive as much assistance "as may be necessary" to enable them to be competitive, however long this might take.

To "promote" competitive viability is not to guarantee it. Public Law 96–481 was passed because Congress perceived a need to eliminate from the 8(a) program exactly those firms which had received assistance for several years without achieving competitive viability.[3] Because a large number of firms are eligible to participate in the 8(a) program,[4] while the number of contracts available to the SBA is limited, the SBA's regulations serve the goals of the statute by ensuring that 8(a) resources are used most effectively in the promotion of economically disadvantaged minority businesses.

Finally, the Fund argues that the SBA's decision to impose an absolute ceiling on participation in the 8(a) program, and in particular its selection of a seven-year maximum to be applied to all businesses regardless of type, is arbitrary and unreasonable because it is without any evidentiary basis.

The Fund may disagree with the SBA's selection of a seven-year limit but that action is hardly unsupported or unreasonable. A proposed rule was published in the *Federal Register* on June 1, 1981. That rule suggested a three-year limit for service industries and a five-year limit for all other businesses, with a possible one-year extension. Interested persons were given until July 31 to submit written comments. Notice of public hearings was published in the *Federal Register,* and four such hearings were held in Chicago, Atlanta, Los Angeles, and Washington, D.C. In response to comment, the final rule was changed so that service industries also faced a five-year maximum and the extension period was increased to a possible two years. SBA also added a provision that an FPPT should not begin to run until the firm was awarded its first contract under the program. The final rule was accompanied by a lengthy statement in which the agency outlined the rationale behind its actions and the consideration it had given to public comment, studies

---

**3.** *See* note 2, *supra.*

**4.** Approximately 2,000 firms are currently participating in the 8(a) program, and as many as

40,000 might be eligible. 46 Fed.Reg. 75267–8 (Nov. 23, 1981).

of the needs of emerging businesses, and the agency's own experience with the 8(a) program. 46 Fed.Reg. 57266–70 (Nov. 23, 1981).

■ The standard of review for a claim of unreasonable action under the APA is a highly deferential one. *Ethyl Corp. v. EPA,* 541 F.2d 1, 34 (D.C.Cir.1975). The Court is not to substitute its judgment for the agency's but simply to ascertain whether the regulations were based on consideration of the relevant factors and whether there has been a clear error of judgment. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974), *rehearing denied,* 420 U.S. 956, 95 S.Ct. 1320, 43 L.Ed.2d 433 (1975); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The SBA's regulation clearly meets that standard.

■ The Fund next challenges the SBA's internal procedures for implementing the FPPT requirement, as set forth in Bulletin # 3 of the Standard Operating Procedure (SOP 80.05) of the 8(a) program. Bulletin # 3 provides for SBA staff a rating and evaluation system for determining FPPTs in particular cases. Bulletin # 3 is available on request. There is no mystery about its contents; the Fund does not claim that they were unaware of the matter contained in the Bulletin, or that the SBA had attempted to withhold that information from the public. Nor do they challenge the substance of the procedures outlined in Bulletin # 3. Rather, because Bulletin # 3 was promulgated without publication in the *Federal Register* or opportunity for public comment, they allege violations of the procedural requirements outlined in the Administrative Procedure Act, 5 U.S.C. § 553, and the Freedom of Information Act, 5 U.S.C. § 552(a)(1)(D).

The APA requires that an agency's substantive regulations be promulgated in accordance with notice and comment procedures prior to adoption. 5 U.S.C. § 553. However, the statute exempts from that requirement "interpretative rules, general

statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). The distinction between substantive rules subject to APA notice and comment requirements, and "interpretative rules," "general statements of policy," and "rules of agency procedure" exempt from those requirements, is notoriously fuzzy. *Batterton v. Marshall,* 648 F.2d 694, 702 (D.C.Cir.1980). Analysis of the question must focus on the rule's effect, and whether compliance with the notice and comment provisions of the APA would serve that statute's purpose of enabling an agency promulgating a rule "to educate itself before establishing rules and procedures which have a substantial impact on those regulated." *Texaco, Inc. v. FPC,* 412 F.2d 740, 744 (3d Cir.1969). Interpretative rules, general statements of policy, and procedural rules exempt from the APA have consequently been described as those which do not narrowly constrict the discretion of agency officials, *Guardian Federal Savings & Loan Association v. Federal Savings & Loan Insurance Corp.,* 589 F.2d 658, 666 (D.C.Cir.1978), do not substantially affect the rights of those subject to agency regulations, *Pickus v. United States Board of Parole,* 507 F.2d 1107, 1112 (D.C.Cir.1974), and do not foreclose alternative courses of action or determine the rights or issues addressed. *Batterton, supra* at 702.

For several reasons, Bulletin # 3 is exempt from the notice and comment requirements of the Act as an interpretative rule, general statement of policy, or internal procedure. Bulletin # 3 provides guidance to SBA staff negotiating FPPTs by outlining the criteria to be considered when determining an FPPT. It also provides a numerical point scoring system for evaluating those criteria, and a range of points within which an SBA staff member is authorized to negotiate and recommend a FPPT.

Most significantly, the criteria outlined in Bulletin # 3 for establishing an appropriate FPPT are derived entirely from the criteria listed in 13 C.F.R. § 124.1–1(f) itself. Indeed, much of the text in Bulletin # 3 is taken verbatim from the published

regulation. It is the regulation, and not Bulletin # 3, which is "finally determinative of the issues or rights to which it is addressed." Bulletin # 3 adds nothing substantive, but simply supplies a procedure to aid SBA staff in applying those criteria more uniformly.

Moreover, the procedures supplied in Bulletin # 3 merely guide SBA staff in negotiating FPPTs. They do not produce predetermined results or irreversible decisions. An SBA staff member negotiating FPPTs following Bulletin # 3 guidelines can only recommend that a certain FPPT be established for an 8(a) firm. Final approval is in all cases reserved for the Regional Director of the 8(a) program. If an 8(a) applicant wishes to appeal from the FPPT recommended by the staff member, Bulletin # 3 provides procedures by which it may do so. Finally, any FPPT set under Bulletin # 3 guidelines may, consistent with the regulations, be extended for as many as six years.[5] 13 C.F.R. § 124.1–1(f). Under these circumstances, use of Bulletin # 3 guidelines can hardly be said to be "determinative" of the rights involved or to foreclose alternative courses of action and constrict the discretion of the agency. Consequently, it is not a "substantive" rule, and is not subject to the notice and comment requirements of the APA.

■ For the same reasons, the Fund is incorrect in suggesting that the SBA's failure to publish Bulletin # 3 is a violation of FOIA, 5 U.S.C. § 552(a)(1)(D), which requires agencies to publish in the *Federal Register* "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." Bulletin # 3 is not a substantive rule because it merely provides procedures for the application of the criteria laid out in 13 C.F.R. § 124.1–1(f), and does not itself determine the rights of firms applying to the 8(a) program. It is the regulation that determines those rights. Bulletin # 3 falls instead under § 552(a)(2)(C) of FOIA, which requires that "administrative staff manuals and instructions to staff that affect a member of the public" be "available for public inspection and copying." The Fund does not claim that it has been unable to inspect or copy Bulletin # 3. Consequently, plaintiff's claim of a § 552(a) violation is without merit.

Summary judgment must be granted for the defendants on all points, and the complaint dismissed.

---

5. Under the regulation, the SBA can extend a FPPT for as much as the difference between the original FPPT and five years, plus two years. If a firm's 8(a) participation is originally limited to an FPPT of one year, this allows up to six years of possible extension.