SUPERIOR ENGINEERING AND ELECTRONICS COMPANY, INC., Plaintiff–Appellant,

v.

James C. SANDERS, as United States Administrator for Small Business Administration; Wilfredo Gonzalez, As Associate Administrator for Minority Small Business and Capital Ownership Development Assistance; R. Stephen Bangs, as Assistant Regional Administrator for Minority Small Business and Capital Ownership Development Assistance; Mercedes B. Shetter, as Assistant District Director for Minority Small Business and Capital Ownership Development Assistance; United States of America, Defendants–Appellees.

No. 87–5530.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1987.

Decided Dec. 1, 1987.

---

Percy Anderson, Los Angeles, Cal., for plaintiff-appellant.

George H. Wu, Asst. U.S. Atty., Los Angeles, Cal., for defendants-appellees.

Before FLETCHER, FARRIS and O'SCANNLAIN, Circuit Judges.

FARRIS, Circuit Judge:

We understand Superior's contention that its one year term as a participant in Section 8(a) of the Small Business Act, 15 U.S.C. § 637(a) was a sham. The one year term corresponded in substantial part with the period that Superior had been deemed ineligible for the Program. Superior's conclusions about the consequences of the overlapping period are the focus of this appeal.

## I.

On December 17, 1973 Superior Engineering, a 100% minority owned California corporation, was admitted as a participant in the Section 8(a) Program of the Small Business Act, 15 U.S.C. § 637(a). On July 9, 1981, the S.B.A. notified Superior that it could no longer participate in the Section 8(a) Program because it no longer fell within the "small business" category. Superior was excluded from the Program but appealed the size determination.

Meanwhile, on October 21, 1980, Congress revised Section 8(a) of the Program by amending 15 U.S.C. § 636(j)(10)(A). The amended section requires the SBA and participants to mutually agree upon a fixed term for the firm to participate in the Program. The statute permits a participant to request one term extension, but explicitly provides that the firm may be terminated at the end of the initial term or extension without a hearing.

In response to this amendment, the SBA promulgated 13 C.F.R. § 124.1–1(f) (1986).[1]

---

1. 13 C.F.R. § 124.1–1(f) (1986) was subsequently amended effective November 24, 1986. *See* 13 C.F.R. § 124.110 (1987). The amendment added provisions to the existing rules but did not

This regulation requires participating firms to negotiate with the SBA for a "fixed program participation term". 13 C.F.R. § 124.1–1(f)(2). At the end of the term, the Program participant automatically graduates. 13 C.F.R. § 124.1–1(f)(8). However, one year prior to the expiration of its term, a firm may request an extension not to exceed the difference between the original term and five years, plus two years. No further extensions are available. 13 C.F.R. § 124.1–1(f)(4)(i). The grant of an extension is discretionary with the SBA, but the factors used by the SBA in negotiating the initial term or granting an extension are listed in 13 C.F.R. § 124.1–1(f)(5).

Under the regulations the maximum term of five years applies to all firms, both those applying for entry into the Program and those currently participating. 13 C.F.R. § 124.1–1(f)(4). The SBA set April 21, 1982 as the deadline for current Program participants to establish a fixed program participation term. 13 C.F.R. § 124.1–1(f)(3)(i).

In January 1982, Superior and the SBA began negotiations to establish a fixed program participation term. In April 1982, a "Participation Agreement" which established a one year term, from April 19, 1982—April 19, 1983, was signed by both Superior and the SBA. Superior contends that the SBA "coerced" it into agreeing to the one year term by telling it that unless it negotiated a fixed program participation term, its size determination appeal could not go forward.

On February 10, 1983, less than three months before the end of Superior's one year term, the Board reversed its prior size determination, and reinstated Superior as a Section 8(a) Program participant. Superior had requested that its fixed program participation term be extended by three years. The request for three years was denied, but a two year extension until April 5, 1985 was granted. Superior subsequently requested another extension. The SBA refused, stating that the extension to April 5,

1985 was the one extension permitted under the regulations.

Superior sued the SBA for declaratory and injunctive relief and moved for summary judgment. The district court denied Superior's motion, but entered summary judgment for the SBA.

## II.

A district court may grant summary judgment for the non-moving party if it is apparent from the record and at the hearing that there is no genuine issue of material fact essential to the movant's case. *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir.1982); *See* 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 56.12 (2d ed. 1987). A district court's decision to grant summary judgment is reviewed *de novo. Lynn v. Sheet Metal Workers' International Association,* 804 F.2d 1472, 1477 (9th Cir.1986). Our review is governed by the same standard as the district court under Fed.R. Civ.P. 56(c). *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986). We view the evidence in the light most favorable to Superior. *See Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

■ Superior argues that the initial one year period was a nullity; that the two year extension was its first term, and it was therefore entitled to an extension for at least one year. We reject the argument.

First, Congress specifically directed the SBA to negotiate fixed participation terms with all firms involved in the Program within eighteen months of the effective date of the amendment to 15 U.S.C. § 636(j)(10)(A). The SBA's regulations complied with this mandate by requiring that fixed program participation terms be negotiated for all firms currently in the Program by April 21, 1982. 13 C.F.R. § 124.1–1(f)(3)(i). By insisting that Superior negotiate the initial term prior to April 21, 1982, the SBA was merely adhering to the congressional mandate.

change the substance of the regulations applied in this case. The references in this disposition shall be to the 1986 version of the regulation which was in effect when Superior's cause of action arose.

Second, when the SBA granted Superior the two year extension, it specifically took into consideration the time that Superior had lost in the Program due to its exclusion and appeal of the size determination. Under these circumstances, the actions of the SBA in denying Superior a second extension were not arbitrary, capricious, or an abuse of discretion, and summary judgment upon the record was not error.

### III.

■ Superior also contends that 13 C.F.R. § 1241–1(f) is contrary to the Small Business Act, and that it violates both the due process and the equal protection guarantees of the Constitution. We reject these claims.

Superior contends that to the extent that 15 U.S.C. § 636(j)(10)(A) or the SBA's interpretation of that section in 13 C.F.R. § 124.1–1(f) deny participants a hearing upon completion of their terms, the statute and regulation are contrary to the underlying purposes of the Small Business Act, as defined in 15 U.S.C. § 637(a) and (b) which is to foster the viability and competitiveness of participating small businesses.

The part of 13 C.F.R. § 124.1–1(f) which prohibits a hearing is entirely consistent with the last clause of 15 U.S.C. § 636(j)(10)(A), which states:

"... That no determination made under this paragraph shall be considered a denial of total participation for the purposes of section 637(a)(9) of this title." 15 U.S.C. § 636(j)(10)(A).

Section 637(a)(9) states that "... no firm shall be denied total participation in any program conducted under authority of this subsection without first being afforded a hearing on the record ..." The last clause of Section 636(j)(10)(A) makes clear that Congress did not intend for participants who complete their negotiated terms or extensions to be granted a hearing upon termination.

The legislative history of the Amendment also supports the conclusion that Congress did not intend for participants to receive a hearing upon completion of their terms. The House Conference Report states that:

"... neither the establishment of a graduation date, SBA's extension of such date, or a firm's completion of the participation period, shall be considered to be a denial of total participation requiring an administrative hearing ..."

H.Conf.Rep. 96–1434, 96th Cong., 2d Sess. 17, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, at 5005.

In *Minority Business Legal Defense and Education Fund, Inc. v. SBA*, 557 F.Supp. 37, 40 (D.D.C.1982), the District of Columbia district court rejected a claim similar to Superior's that challenged the statutory validity of the regulation. The court reasoned that "[t]o 'promote' competitive viability is not to guarantee it." *Id.* The court noted that Congress had amended the Small Business Act because it was concerned about the number of firms continuing to receive Section 8(a) assistance for many years without achieving competitive viability. The court also noted the large number of firms eligible for Section 8(a) assistance versus the limited number of Section 8(a) contracts available. The court concluded that the regulation served the goals of the Small Business Act by ensuring that SBA resources were used most effectively. *Id.* We find its reasoning persuasive.

The challenged regulation is also sound under the due process clause. A firm's interest in participating in the Section 8(a) Program must rise to a claim of "entitlement" in order to require fair process in determining whether termination is proper. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701–2709, 33 L.Ed.2d 548 (1972); J. Nowak, R. Rotunda & J. Young, *Constitutional Law* § 15.3 at 549 (2d ed. 1983). Entitlement is determined by looking at the applicable law. If the statute creates no claim to future benefits, there is no entitlement to continued benefits. *Id.* at 550. "... (A) state may be allowed to eliminate the need for hearings to determine the basis for termination of benefits by establishing a system which clearly indicates that there is no right to continuation of benefits ..." *Id.* The mutual negotiation of a fixed program partic-

ipation term between the SBA and the participant provides clear notice that once the term has expired the participant has no right to continue receiving benefits.

■ Our review of the constitutionality of 13 C.F.R. § 124.1–1(f) under equal protection principles is limited to determining whether the regulation is reasonably related to achieving a permissible objective. *American Hospital Management Corp. v. Harris*, 638 F.2d 1208, 1213 (9th Cir.1981). The classification scheme must be upheld so long as it bears a reasonable relationship to the purpose of the regulation. *Id.*

Superior argues that the regulation fails the rational relationship test, and identifies two classes of Section 8(a) participants: (1) those who are terminated from the program for cause, but provided a hearing, and (2) those who are terminated because their fixed program participation terms have expired, but are not provided a hearing. Superior argues that the two groups are similarly situated because both have been involuntarily terminated from the Program and both are in equal need of the Program's assistance. We reject the argument.

Firms that are automatically "graduated" due to the expiration of their terms are not "involuntarily" terminated in the same sense as firms that are terminated for cause. The fixed program participation term is mutually agreed upon after negotiations between the SBA and the participant. In amending 15 U.S.C. § 636(j)(10(A), Congress was specifically concerned about companies which remain in the Program for many years without ever gaining the vitality to compete on their own in the market. There is a rational distinction between (1) terminating a firm after a prenegotiated term of years so that firms who have not been able to achieve competitiveness over a number of years do not remain in the Program indefinitely and other eligible firms have the opportunity of entering the Program and benefiting from the SBA's limited resources, and (2) terminating a firm because the SBA believes the firm is no longer eligible to receive assistance or because the SBA believes the firm has engaged in some improper action.

Affirmed.