TRANSCO SECURITY, INC. OF OHIO
and Fred Gaviglia,
Plaintiffs-Appellants,

v.

Roland G. FREEMAN, III, Administrator,
and General Services Administration,
Defendants-Appellees.

No. 80–3155.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 9, 1980.

Decided Jan. 23, 1981.

William R. Hardy, Graydon, Head & Ritchey, Cincinnati, Ohio, for plaintiffs-appellants.

Anthony Nyktas, Asst. U. S. Atty., Cincinnati, Ohio, John C. Hoyle, Civil Division, Appellate Staff Dept. of Justice, Washington, D. C., for defendants-appellees.

Before ENGEL, MERRITT and KENNEDY, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Transco Security, Inc. of Ohio (Transco-Ohio) and Fred Gaviglia, its president, appeal the District Court's refusal to enjoin their suspension by the General Services Administration from bidding on GSA contracts. They charge that the GSA regulations authorizing suspension of contractors suspected of fraud violate due process.

Transco-Ohio is engaged in the business of supplying guard services to various government agencies. Fred Gaviglia, its president and principal owner, was also the president of another corporation, Transco Security, Inc. of Delaware (Transco-Delaware). On September 2, 1976, Transco-Delaware was awarded a GSA contract under the small business set-aside provisions of the Small Business Act, 15 U.S.C. § 644, to provide security services at GSA buildings in the Cincinnati area. Several weeks later the Small Business Administration (SBA) determined that Transco-Delaware did not qualify as a small business because of the relationship of one of its owners with a Chicago-based janitorial services company.

On February 2, 1977, Mr. Gaviglia and his wife purchased all the outstanding interest in Transco-Delaware. Mr. Gaviglia then arranged for the firm to be financially managed by Management Consultants, a firm associated with the Chicago-based company. Subsequently, the SBA's Size Appeals Board determined that Transco-Delaware did qualify as a small business, and on August 1, and 15, 1978, respectively, GSA awarded Transco-Delaware guard services contracts for Cleveland and Cincinnati.

In September 1978, Transco-Delaware ceased to exist. Mr. Gaviglia thereupon formed Transco Security, Inc. of Ohio (Transco-Ohio) and took over all outstanding contracts, including the Cincinnati contract. On January 28, 1980, two days prior to the expiration of the existing Cincinnati contract and the start of the new Cincinnati contract, General Service Commissioner Marschall notified appellants by letter that his office was in receipt of evidence that Transco Security, Inc. of Ohio and Transco Security, Inc. of Delaware were engaged in the commission of fraud as an incident to obtaining and performing public contracts for the General Services Administration and that Transco-Ohio and Fred Gaviglia were temporarily suspended from doing business throughout the General Services Administration.

Appellants were advised on February 15, 1980, again by letter, that the evidence of fraud of Transco-Ohio concerned billing irregularities and misrepresentations regarding its eligibility for public contracts. Mr. Gaviglia was advised that the evidence of fraud also included billing irregularities of Transco Security, Inc. of Delaware and that he was suspended because he was an officer of both corporations. On February 19, 1980, appellants requested a hearing regarding their suspension. On February 21, 1980, GSA awarded the Cincinnati contract to another company although Transco-Ohio was the low bidder.

On February 26, 1980, appellants filed this action to set aside the suspension and enjoin GSA from precluding them from bidding on GSA contracts and to prevent the award of the Cincinnati contract to others. They assert that the regulations of the General Services Administration relating to suspension of contractors are violative of due process, since under the circumstances of this case appellants can be prohibited from bidding and being awarded GSA contracts for up to 18 months without being afforded a hearing. Further, they charge the notices of the reasons for suspension are so deficient that they amount to no notice at all, a further denial of due process. Transco-Ohio also requested damages.

Section 1–1.605–1 of the Public Contracts, Property Management, Federal Procurement Regulations, (41 C.F.R. Sec. 1–1.605–1 (1975)) provides:

(a) An agency may, in the interest of the Government, suspend a firm or individual:

(1) Suspected, upon adequate evidence, of—

(i) Commission of fraud or a criminal offense as an incident to obtaining, attempting to obtain, or in the performance of a public contract.

This regulation also permits suspension for violation of various criminal statutes and for other causes of a "serious and compelling nature." Section 1–1.605–2 provides that the suspension shall be for a temporary period pending the completion of an investigation and legal proceedings that may ensue. If no prosecution is initiated by the Department of Justice within 12 months from the date of a notice of suspension, the suspension must be terminated, unless an Assistant Attorney General requests continuance of the suspension in which case it may be continued for an additional six months. The regulations further provide for notice in general terms of the nature of the irregularities on which the suspension is based. 41 C.F.R. 1–1.605–3(a). Except in those cases in which the suspension is based on an outstanding indictment, the suspended bidder may request a hearing upon receipt of the notice of suspension. The General Services Administration is, however, required to secure formal advice of the Department of Justice concerning the impact of release of evidentiary material on possible civil or criminal action before conducting a hearing. Under certain circumstances, including those present in the instant case, a hearing may be denied. The regulations provide:

§ 1–1.605–4(e) Hearing denied. If it is determined, based upon the advice received from the Department of Justice or the Department of Labor, that to hold a hearing would adversely affect possible civil or criminal prosecution or possible

Labor proceedings against the firm or individual, this determination will be reduced to writing and made a part of the formal record. Notice shall then be furnished to the firm or individual within 20 calendar days after receipt of the request for a hearing that substantial interests of the Government would be prejudiced if a hearing were held but that any information or argument in opposition to the suspension may be presented in person, in writing, or through representation. Any information or argument submitted will be promptly considered by the head of the agency or his authorized representative and, if such action is deemed warranted, the suspension shall be terminated.

The determination whether to grant or deny a hearing is to be made by the agency head or his designee. 41 C.F.R. 1–1.605–4(b).

On February 27, 1980, the U. S. Attorney's office orally notified GSA that holding a hearing on appellants' suspension would adversely affect its criminal investigation. The motion for a preliminary injunction was heard February 28. During the hearing the District Judge permitted the GSA, over appellants' objections, to present certain evidence in an *in camera* proceeding from which appellant Fred Gaviglia and his attorney were excluded. The motion for preliminary injunction was denied that same day. The District Judge held that "the plaintiffs have not been denied due process thus far and there is no showing of a likelihood that they will be denied due process, i. e., that they will not [sic] be denied a hearing or, if a hearing is denied (as we expect that it will be) that plaintiffs will not be given the opportunity to present any information or argument in opposition to the suspension in person, in writing or through representation...." He further concluded that plaintiffs "failed to demonstrate a substantial likelihood that they will eventually prevail on the merits." The record reflects that appellants' request to GSA for a hearing was denied by Commissioner Marschall on March 6, 1980 (after the appeal had been filed). An opportunity was extended to appellants to present to him any evidence they might wish as to why they should not be suspended.

The regulations at issue here were adopted following the decision of the D.C. Circuit in *Horne Brothers v. Laird*, 463 F.2d 1268 (D.C.Cir.1972) in which Judge Leventhal held for that court that contractors could not be suspended from bidding on government contracts for extended periods of time without notice of the charges against them and an opportunity to rebut those charges. The government contends that the regulations accommodate those requirements, while appellants assert 'that the regulations failed to provide for meaningful notice and opportunity to be heard.

■ One who has been dealing with the government on an ongoing basis may not be blacklisted, whether by suspension or debarment, without being afforded procedural safeguards including notice of the charges, an opportunity to rebut those charges, and, under most circumstances, a hearing. *Gonzales v. Freeman*, 334 F.2d 570 (D.C.Cir.1964); *Horne Brothers, supra; Old Dominion Dairy Products, Inc.*, 631 F.2d 953 (D.C.Cir.1980). While the deprivation of the right to bid on government contracts is not a property interest (procurement statutes are for the benefit of the government, not bidders, *Keco Industries v. U. S.*, 428 F.2d 1233 (Ct.Cl.1970)), the bidder's liberty interest is affected when that denial is based on charges of fraud and dishonesty. *Old Dominion Dairy Products, Inc. supra.* The minimum requirements of due process are notice and an opportunity for hearing appropriate to the nature of the case. *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1970).

### HEARING

■ The regulations provide that although a request for a hearing may be made (1.1–605–4(a)) that request may be denied if a hearing would "adversely affect possible civil or criminal prosecution" (1.1–605–4(e)). Under those circumstances, in lieu of a hearing, the suspended bidder may

present any information or argument in opposition to the suspension either in person, in writing, or through representation to the head of the agency or his authorized representative who is given authority if it is deemed warranted to terminate the suspension. Appellants challenge this provision on two bases: the failure to provide any hearing and the potential length of suspension (18 months should the ongoing criminal investigation continue that long).

What process is due requires a balancing between the government's interest and the private interest.

> The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation .... [C]onsideration of what procedures due process may require under any given circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.

*Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1960).

Two government interests are invoked here. First, there is the right of the government as proprietor to purchase services, here services of a sensitive nature. Not only does the government have its usual concern that it get its money's worth, a concern present in all expenditures of taxpayers' money, but it has the further concern that guard services are essential to the daily operation of important government facilities. The second interest is in protecting the integrity of a possible criminal prosecution. On the other hand, appellants possess the liberty interest not to be denied the opportunity to bid on, and be awarded government contracts while under the cloud of a charge of fraud. The regulations attempt to accommodate these conflicting interests by requiring the decision of a top level administrator in accordance with specifically articulated standards before the suspension may be issued and permitting the suspended bidder to submit information and argument in opposition to suspension.

Thus the risk of erroneous deprivation of appellants' interest is slight.

This opportunity to rebut charges distinguishes this case from *Horne Brothers*, upon which appellants rely. In *Horne Brothers*, plaintiff was suspended from bidding on government contracts because of alleged unlawful activities regarding prior government contracts. When the government refused to award Horne a naval vessel repair contract on which it was low bidder, Horne sought and was granted a preliminary injunction. Although Horne was subsequently indicted for these activities, the District Judge refused to dissolve the injunction. On appeal the D.C. Circuit reversed, finding Horne not likely to prevail on the merits. The court went on, however, to address the procedures utilized in suspending contractors, noting that the existing suspension regulations did not require that the suspended contractor be offered an opportunity to confront his accusers and to rebut the "adequate evidence" against him even though suspension might last for more than 18 months.

Appellants seize on the following language from *Horne Brothers* in support of their position.

> While we may accept a temporary suspension for a short period, not to exceed one month, without any provision for according such opportunity to the contractor, that cannot be sustained for a protracted suspension.

463 F.2d at 1270.

In *Horne Brothers*, the suspended contractor was given no opportunity to rebut the adequate evidence finding. Under the present regulations, promulgated following *Horne Brothers*, suspended contractors denied a hearing are provided the opportunity to present information or argument, in person, in writing, or through representation in opposition to the suspension. Thus under the current regulations, suspended contractors will not "dangle in suspension for a period of one year or more" before being given an opportunity to rebut charges. 463 F.2d at 1271. Under most circumstances, this opportunity coupled with proper notice

will timely cure such errors as suspending the wrong contractor or suspending a contractor based on mere suspicion, unfounded allegation, or error. This opportunity, however, is only meaningful if the notice is sufficiently specific to permit the suspended contractor to collect and present relevant evidence refuting the charges contained therein.

We turn then to the adequacy of the notice required by the regulations and provided here.

## NOTICE

Appellants' second due process challenge is that the general notice required by the regulations and given here is deficient because it did not inform appellants of the reasons for their suspension and thus made any subsequent opportunity to be heard meaningless. Not only was the notice in general terms but the reasons originally given were later modified. Commissioner Marschall's affidavit filed in the District Court proceeding states that the grounds for suspension are:

> The fraudulent representations involve the status of Transco Security, Inc., a Delaware Corporation, as a small business and overcharges to the Government based on work which Transco Security, Inc., a Delaware Corporation, represented was performed for the Government, but which was, in fact, not performed. In addition, Transco Security of Ohio has misrepresented the caliber of performance of its employees resulting in overbillings.

The earlier notices had referred to misrepresentations regarding the eligibility of Transco-Ohio and billing irregularities by that corporation as well as the Delaware corporation. There was no reference to the quality of personnel.

■ Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1949). Or, as recently expressed, the purpose of notice is to apprise the affected individual of, and permit adequate preparation for, an impending hearing. *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

■ The general notice which appellants received did not permit adequate preparation for participation in a meaningful way in any forthcoming hearing or equivalent proceeding. Appellants were suspended for, among other things, "billing irregularities." At the time this information was received, appellants had performed a number of contracts for the GSA over several years at various locations. Appellants were not told to which of these contracts the "billing irregularities" referred. Without further identifying information of at least the contract involved, and approximate date of misbillings, it would be at best onerous and at worst virtually impossible to effectively gather and present relevant information refuting this general charge.

■ Similarly the charge "misrepresented the caliber of employees" is also deficient. Which employees assigned to which of Transco-Ohio or Transco-Delaware's contracts does the charge refer and how was the caliber of employees misrepresented? Does it refer to the extent or quality of the employees training or to their actual performance, their diligence, tardiness, absences? It should be possible to provide at least some specifics.

The D.C. Circuit has twice addressed the notice aspect of due process in the context of suspension of a government contractor: *Horne Brothers, supra,* and *Old Dominion Dairy Products, supra.* Although there are factual distinctions between these cases and the one now before us, that court's language with respect to the notice required is instructive. In *Horne Brothers,* the court required the bidder be given "specific notice as to at least some charges alleged against him . . . ." 463 F.2d at 1271. And in *Old Dominion Dairy Products,* the court noted:

> We agree with appellant that due process in this case includes the right to be *noti-*

*fied* of the specific charges concerning the contractor's alleged lack of integrity, so as to afford the contractor the opportunity to respond to and attempt to persuade the contracting officer, in whatever time is available, that the allegations are without merit.

*Id.* at 968.

The need for more specific notice is particularly critical when the regulations provide in lieu of an adversary hearing the opportunity to submit information in opposition to suspension.

■ We believe that as in *Horne Brothers* and *Old Dominion*, due process in this case required notice sufficiently specific to enable appellants to marshal evidence in their behalf so as to make the subsequent opportunity for an administrative hearing a meaningful one. We recognize the government's right to protect the secrecy of its ongoing criminal investigation by not disclosing its evidence at this stage of the proceedings. We find, however, that in this case the interests of appellants in more specific notice and, of the government in maintaining the integrity of its investigation, are not mutually exclusive. Advising appellants of which bills were irregular and how the caliber of its employees were misrepresented need not involve the disclosure of the government's evidence. The government need not at this point inform appellants of any information it has. It need not reveal, for example, the identity of potential witnesses or the existence of documents unknown to appellants. It can state the charges with more particularity without identifying the source of the government's information. While there may be instances where specificity cannot be accomplished without disclosure this was not such an occasion.

At oral argument appellants stated that they had not yet availed themselves of this opportunity to present information. We do not find this surprising in view of the inadequate notice which they received. Without a clear understanding of at least some of the facts which comprised the grounds for suspension, the opportunity to present information is a meaningless one.

■ Where all the proper procedures are followed we do not find the potential 18-month suspension constitutionally defective. Suspension may be based only on adequate evidence which is determined by a high administrative official within the GSA. In this case the decision was made by GSA Commissioner Marschall. Writing for the Court in *Horne Brothers*, Judge Leventhal likened a showing of "adequate evidence" to one of probable cause.

The "adequate evidence" showing need not be the kind necessary for a successful criminal prosecution or a formal debarment. The matter may be likened to the probable cause necessary for an arrest, a search warrant, or a preliminary hearing. This is less than must be shown at the trial, but it must be more than uncorroborated suspicion or accusation.

463 F.2d at 1271.

■ Once a determination of adequate evidence has been made, specific notice of the reasons for suspension have been timely provided, and the contractor, having been denied a hearing, has presented information or argument, the possibility of a lengthy suspension based on mere suspicion, unfounded allegation, and clear error no longer exists. Having provided these preliminary procedural safeguards, we do not believe it is unreasonable that the government should then have a period of 12 months (or 18 months should the Assistant Attorney General request an additional six months) in which to prepare its case and decide whether to indict. During that period the government's interest in not dealing with a contractor which it has probable cause to suspect of wrongdoing outweighs the contractor's interest in being awarded and performing government contracts.

Appellants' remaining arguments center around the February 28, 1980 hearing on the motion for preliminary injunction. Appellants allege they were prejudiced by the District Court's *ex parte in camera* inspection of GSA's evidence, and its refusal to permit a full hearing on the merits of appellants' suspension.

In view of our holding that due process is satisfied by the high level administrative review of adequate evidence, it is unnecessary for the District Court to review the evidence upon which the determination to suspend was made. Nor is it necessary for the court to grant a full hearing as to whether the suspension was proper. Judicial review should be confined to whether the proper administrative procedures were followed.

We note that generally the purpose of an *in camera* inspection by the District Court is to permit the District Judge to examine documents and determine which documents, or which portions of documents, may properly be disclosed to the other party, which should continue to be held in a confidential status, *Committee for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 792 (D.C. Cir.1971), and to separate those documents or portions of documents to be disclosed from those that must remain confidential in order to maintain the integrity of the government's legitimate interests. *In camera* evidence is ordinarily not used for the purpose of making a determination. Where the government asserts that it cannot give specific notice because to do so would seriously prejudice an ongoing criminal investigation, it may be appropriate for the court to examine the evidence *in camera* to ascertain whether the contractor has been given as specific a notice as is possible under the circumstances. If it finds that the notice given is all that can be under the circumstances, the contractor having received the process due would not be entitled to further relief. Suspension is, after all, only a temporary condition which is to last only for the period of time necessary for investigation.

### RELIEF

Like the D.C. Circuit in *Old Dominion Dairy Products*, we are faced with the difficult task of fashioning appropriate relief nine months after the occurrence giving rise to this litigation. At this point we are unable to tell from the record what would have happened if the District Court had granted the injunctive relief sought and required the government to provide adequate notice thereby making the opportunity to present information a meaningful one. From the record before us, we can only conjecture as to whether appellants would have been removed from the suspension list had they taken advantage of, and presented information at, this interim hearing. Although they were the low bidders there is nothing in the record to guarantee that appellants would have received the Cincinnati and Indianapolis guard service contracts had they initially received the notice to which they were entitled. However, appellants did have a right to receive adequate notice of the allegations against them so they could have a meaningful opportunity to answer those allegations. Although the Cincinnati and Indianapolis contracts are no longer in issue, appellants retain the right to that opportunity.

Given the circumstances of this case we reverse and remand to the District Court to determine whether the suspension proceedings or any other proceedings have served to cure the constitutional defect of inadequate notice and have given appellants a meaningful opportunity to present information as to why they should not have been suspended. If such cure has not yet occurred, we instruct the District Court to reconsider this case in light of this opinion and enjoin suspension unless the government cures by immediately providing proper notice. The suspension period must be computed, however, from January 28, 1980, the date of the defective notice.