**SOWELL'S MEATS AND SERVICES, INC., Appellant,**

v.

**Peggy McSWAIN; Vivial Pilant; Kenneth C. Beam; Frances McAllister; Martha Briggs; Amelia Helms; Joseph Bonds; J. Spratt White; Miller F. Coggins; James B. Cook; W. Waddell Gibson; Trudie B. Hemmsoth; Annie S. Suite, and Robert L. Whitley, All Constituting Members of the Board of Trustees, School District No. 4, and Peggy Powers, Appellees.**

No. 85–1942.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 8, 1986.

Decided April 11, 1986.

Kenneth E. Sowell, Greenville, S.C., for appellant.

Stephen R. McCrae, Jr. (Melvin B. McKeown, Jr., Spratt, McKeown & McCrae, York, S.C., on brief), for appellees.

Before MURNAGHAN and SNEEDEN,[*] Circuit Judges, and BUTZNER, Senior Circuit Judge.

PER CURIAM:

Sowell's Meats and Services, Inc., a supplier of foodstuffs, brought this action against various officials responsible for the administration of the school lunch program of Fort Mill School District Number 4, South Carolina. Sowell seeks actual and punitive damages for the defendants' alleged failure to abide by South Carolina and United States Department of Agriculture procurement standards. The district court concluded that Sowell lacked standing to pursue its actions under 42 U.S.C. §§ 1983 and 1985 and South Carolina law and gave summary judgment for the defendants.[1] We affirm.

Sowell alleges that state and federal laws pertaining to the administration of the national school lunch program grant it a "protected right" as a beneficiary of those laws. It complains that the school officials, acting under color of state law, have deprived it of rights secured by the consti-

---

[*] The Honorable Emory M. Sneeden resigned from the court before this case was decided. He did not participate in the decision.

[1]. The district court's opinion is reported as *Sowell's Meats and Services, Inc. v. McSwain,* 618 F.Supp. 140 (D.S.C.1985).

**228**

tution and laws of the United States and South Carolina by failing to adhere to state and federal procedures for the procurement of food for the lunch program. Sowell asserts that "a disappointed bidder has standing to challenge the bid (procurement) procedures administered by state agencies disbursing federal funds pursuant to procedures mandated by the federal government, when the federal government has no enforcement procedure except private actions by citizens."

 In order for Sowell to establish standing to maintain an action under § 1983 it must show that the school officials deprived it of a property interest or a right secured by the constitution and laws of the United States. *See Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979); *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972). For reasons adequately stated by the district court, we agree that South Carolina law does not confer a property interest on unsuccessful bidders for public contracts. *See* 618 F.Supp. 142–47. The district court satisfactorily explained why cases from other jurisdictions on which Sowell relies are inapplicable, and its decision is consistent with the majority rule barring an unsuccessful bidder from bringing an action against public contracting officials. Furthermore, the district court's denial of standing is in accord with the only other case that has considered the claim of a disappointed bidder in the national school lunch program. *See ARA Services, Inc. v. School District of Philadelphia,* 590 F.Supp. 622 (E.D.Pa.1984).

 Ordinarily, in the absence of state law creating a property interest in a disappointed bidder for state contracts, the bidder lacks standing to question the award of the contract. But Sowell insists that the bid procedures contained in 7 C.F.R. § 210.-19(a) and Office of Management and Budget Circular A–102 afford it standing.

 *Perkins v. Lukens Steel Co.,* 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940), holds that bidders on federal contracts do not have standing to question the contracting officers' application of procurement statutes unless Congress discloses an intent to confer standing.[2] In reaching this conclusion, the court explained that procurement statutes are for the benefit of the government—not prospective bidders. 310 U.S. at 126, 60 S.Ct. at 876; *see also Transco Security, Inc. v. Freeman,* 639 F.2d 318, 321 (6th Cir.1981). We must, therefore, examine federal law dealing with the procurement of food for the national school lunch program to determine whether Congress intended to afford standing to disappointed bidders to sue state agencies that are recipients of federal aid.

Congress established the school lunch program to assist states through grants in aid to provide nutritious food for the nation's children, and it authorized the Secretary of Agriculture to prescribe regulations for the operation of the program. 42 U.S.C. §§ 1751 and 1779. The Secretary directed state agencies to comply with OMB Circular A–102 which specifies procurement standards for federal assistance programs. 7 C.F.R. § 210.19(a). The circular authorizes grantees to use their own procedures and apply local laws, providing they meet the prescribed standards.

 Neither the statute, the regulations, nor the circular expressly confer standing on a disappointed bidder to question a state agency's award of a procurement contract, and we find no implicit conferral of standing. The standards do not require state agencies to award a contract to the low bidder. The circular provides:

Awards shall be made only to responsible contractors that possess the potential ability to perform successfully under the terms and conditions of a proposed procurement. Consideration shall be given to such matters as contractor integri-

**2.** Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702, now authorizes judicial review of claims asserted by unsuccessful bidders on federal contracts that the contracting agency has failed to follow federal procurement stan-

dards. *William F. Wilke, Inc. v. Department of the Army of United States,* 485 F.2d 180 (4th Cir.1973). Section 10 does not authorize review of claims against state agencies, 5 U.S.C. § 551(1).

ty, compliance with public policy, record of past performance, and financial and technical resources.

OMB Circular A–102, Attachment O, 6 (1981 Revision). This provision illustrates that the standards give broad discretion to the state agency in its procurement of food.

In *Phelps v. Housing Authority of Woodruff*, 742 F.2d 816, 822–23 (4th Cir. 1984), we concluded that the broad discretion granted by federal law to a local housing authority to select tenants negated a prospective tenant's claim of a property interest in a statutory preference for persons occupying substandard housing. Although *Phelps* dealt with a different statute, the principles that underlie its decision are applicable to Sowell's claim.

Here, as in *Phelps*, the discretion allowed the contracting officer demonstrates a lack of a property interest or of any protected right in federal procurement procedures and indicates that judicial review of the award of a contract at the behest of a disappointed bidder is inappropriate. The same point is emphasized in *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127, 60 S.Ct. 869, 876–77, 84 L.Ed. 1108 (1940), where, referring to the Public Contracts Act, the Court said:

> That Act does not depart from but instead embodies the traditional principle of leaving purchases necessary to the operation of our Government to administration by the executive branch of Government, with adequate range of discretion free from vexatious and dilatory restraints at the suits of prospective or potential sellers. It was not intended to be a bestowal of litigable rights upon those desirous of selling to the Government; it is a self-imposed restraint for violation of which the Government—but not private litigants—can complain.

Sowell seeks to distinguish *Phelps* because that case emphasizes that the Secretary of the Department of Housing and Urban Development is authorized to enforce the housing standards enacted by the Congress. In contrast, Sowell argues, no means are provided for enforcing the regulations and the OMB standards for the lunch program except through actions by private citizens.

Sowell's argument is based on a mistaken premise. The Secretary has adequate means of enforcing the federal procurement standards. Whenever a state agency materially fails to comply with pertinent regulations or the OMB standards, the Secretary, acting through the Food Nutrition Service, may suspend or terminate the program in whole or in part or take any other appropriate action. 7 C.F.R. § 210.19. As in *Phelps*, the express provision for enforcement of federal standards by the Secretary forecloses an implied private right of action. *See* 742 F.2d at 822.

The judgment of the district court is affirmed.

