PRO–MARK, INC., Plaintiff,

v.

Jack KEMP, Secretary of the U.S. Department of Housing and Urban Development (HUD); Raymond A. Harris, Regional Administrator of HUD, Region IV; Audrey Scott, Deputy Assistant Secretary of the Community Planning Division and the Department of Housing and Urban Development (HUD), Defendants.

Civ. A. No. J89–0562(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 29, 1991.

---

---

Wilbur O. Colom, Colom & Colom, Columbus, Miss., for plaintiff.

Pshon Barrett, Asst. U.S. Atty., Jackson, Miss. (John K. Grisso, Asst. Regional Counsel, U.S. Dept. of Housing and Urban Development, Atlanta, Ga., of counsel), for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiff Pro–Mark, Inc. brought this action charging that defendants [1] wrongfully issued a Limited Denial of Participation pursuant to 24 C.F.R. Part 24, Subpart G (April 1, 1989), which restricted plaintiff's participation in United States Department of Housing and Urban Development (HUD) programs, and failed to grant a hearing in connection therewith in violation of plaintiff's right to due process under the Fifth Amendment of the United States Constitution. This cause is presently before the court on cross-motions of the parties for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The facts giving rise to plaintiff's claims are essentially undisputed. In February 1988, Pro–Mark submitted to HUD's Office of Program Policy Development an unsolicited technical assistance proposal. By letter from Raymond A. Harris, Regional Administrator–Regional Housing Commissioner of HUD, Pro–Mark was advised that the

---

**1.** Defendants are Jack Kemp, Secretary of the United States Department of Housing and Urban Development (HUD); Raymond A. Harris, Regional Administrator of HUD, Region IV; Audrey Scott, Deputy Assistant Secretary of the Community Planning Division; and the Department of Housing and Urban Development (HUD).

secretary of HUD had "approved funding in the amount of $150,000 for a Technical Assistance Program award to Pro–Mark, Inc.," the purpose of which was "to assist small, minority, and disadvantaged businesses to participate more fully in Community Development Block Grant (CDBG) programs and CDBG contracting activities in the State of Mississippi." The letter recited that the notification of funding approval did "not ... constitute a formal contractural [sic] agreement;" the awarding of an agreement was to be contingent upon satisfactory resolution of a number of provisos.

Ms. Norma Cannon, Regional Contracting Officer, and Warren Howze, Urban Management Specialist, were assigned to work with plaintiff to resolve concerns expressed in Harris' notification letter and to negotiate a final cooperative agreement; these parties began working toward that end. However, the processing of the contract was suspended after Pro–Mark was named as an unindicted co-conspirator in a federal grand jury indictment. The grand jury indictment, which was returned on April 29, 1989, named Leslie G. Range, d/b/a Pro–Mark, Inc., as an unindicted co-conspirator in a scheme to bribe Dubois Gilliam, a deputy assistant secretary at HUD, in order to obtain HUD's approval and funding of a technical assistance grant to Pro–Mark. In a May 10, 1989 letter to Pro–Mark's president, Leslie Range, Harris advised Pro–Mark that he was "suspend[ing] processing of the proposed technical assistance agreement between Pro–Mark, Inc. and [HUD]," as a result of Pro–Mark's being implicated in criminal conduct related to its obtaining prior HUD contracts.

Plaintiff responded to the May 10 notification in a May 16, 1989 letter to Harris wherein Range expressed his position that Pro–Mark was not the subject of the indictment and had not been charged with any crime. Range explained that he had fully cooperated in the investigation of the scheme alleged by the indictment and advised that the Assistant United States Attorney responsible for the prosecution of Gilliam could provide information concerning Pro–Mark's role in the matters which were investigated. In that letter, Pro–Mark requested that it be granted a hearing by HUD in connection with the suspension. A virtually identical letter was sent a week later to Ms. Audrey Scott, General Deputy Assistant Secretary of HUD. Range again wrote Harris on May 31, 1989 expressing concern about "any negative implications which might arise as a result of this matter," and assuring Harris that "Pro–Mark [was] in a position to continue as a responsible HUD contractor." Pro–Mark advised that it considered the actions of HUD to be a Limited Denial of Participation under the provisions of 24 C.F.R. Part 4, Subpart G, and requested a conference with Harris. However, no hearing or conference was granted and the proposed contract has never been executed. About a year later, on June 12, 1990, Harris' office issued to Pro–Mark a notice of Limited Denial of Participation prohibiting Pro–Mark's participation in programs administered by the assistant secretary for community planning and development of HUD. The notice of Limited Denial of Participation recited that it was issued in accordance with 24 C.F.R. § 24.705(a) because of "irregularities in a participant's or contractor's past performance in a HUD program," and in particular, Pro–Mark's "having been identified as a co-conspirator in the case of *United States of America vs. Dubois Gilliam*, in which Mr. Gilliam pled guilty," and in which Gilliam had testified that he had "received $400 in cash, and in hotel gratuities from Les Range out of Jackson, Mississippi, President of Pro–Mark, Inc." After the Limited Denial of Participation was issued against plaintiff on June 12, 1990, plaintiff was provided an opportunity for a conference for reconsideration of that action in keeping with the regulations. It is undisputed that at the conference held on August 6, 1990, the Limited Denial of Participation was upheld.

Pro–Mark has moved for summary judgment, asserting that the evidence of record establishes that defendants wrongfully issued a Limited Denial of Participation on May 10, 1989, and wrongfully failed to grant a hearing in connection therewith as

required by HUD regulations and the Fifth Amendment. Defendants have responded with a cross-motion for summary judgment.

## DUE PROCESS

■ The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." In the case at bar, plaintiff contends that the suspension of the technical assistance contract between Pro–Mark and HUD without notice and an opportunity to be heard was an impermissible interference with plaintiff's "property" interest in the contract which HUD had awarded to plaintiff, and that consequently, plaintiff was entitled to prior notice and an opportunity to be heard. It is clear, however, that plaintiff had no property interest in the alleged contract, for in fact, there was no contract. Contrary to plaintiff's characterization that it had been awarded the contract, Pro–Mark was explicitly advised in correspondence from HUD that the notice of funding approval for the program did not amount to a final contractual arrangement. Moreover, the May 10, 1989 notification from HUD recited that HUD was suspending the *processing* of the contract; there was simply no contract to suspend. The proof is uncontroverted that no grant agreement had been consummated and no contract executed between plaintiff and HUD. Consequently, there was no property interest of which plaintiff was deprived by the suspension of the processing of the contract. *See, e.g., Old Dominion Dairy v. Secretary of Defense,* 631 F.2d 953, 961 (D.C.Cir. 1980) (plaintiff had no "property" interest in government contract awards); *Transco Security, Inc. v. Freeman,* 639 F.2d 318, 321 (6th Cir.1981) (deprivation of right to bid on government contracts by suspension not a property interest).

■ That Pro–Mark had no cognizable property interest in the potential HUD contract does not, however, preclude the possibility that a "liberty" interest was infringed by the suspension. In *Old Dominion Dairy,* a case heavily relied on by plaintiff, the court recognized that a potential government contractor's liberty interest, "i.e. a right to be free from stigmatizing governmental defamation having an immediate and tangible effect on its ability to do business," *Old Dominion Dairy,* 631 F.2d at 961, might be deprived by the government's effectively barring that contractor from virtually all government work due to charges that the contractor lacked honesty or integrity. *Id.* at 963. Similarly, in *Transco Security,* the court, citing *Horne Brothers v. Laird,* 463 F.2d 1268 (D.C.Cir. 1972), observed that a contractor could not be suspended from bidding on government contracts for extended periods of time without notification of the charges against him and an opportunity to rebut the charges. The court went on to state that "a bidder's liberty interest is affected when [the deprivation of the right to bid on government contracts] is based on charges of fraud and dishonesty." *Transco Security,* 639 F.2d at 321. These holdings were based in part on the observation by the United States Supreme Court that "where a person's good name, reputation, honor, or integrity is at stake because of what the Government is doing to him, notice and an opportunity to be heard is essential." *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972) (quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)).

■ In a case such as the one *sub judice,* a liberty interest would be implicated such as would trigger due process concerns if the suspension were based on charges of fraud or dishonesty so as to impose a stigma which foreclosed plaintiff's ability to obtain other contracts. *See Board of Regents,* 408 U.S. at 573–74, 92 S.Ct. at 2707–08; *Old Dominion Dairy,* 631 F.2d at 963; *Transco Security,* 639 F.2d at 321. While it is the case that the suspension of the processing of the Pro–Mark/HUD contract was based on charges of fraud or dishonesty on the part of Pro–Mark, those charges originated with and emanated from the grand jury indictment previously described. The source of any stigmatizing effect on plaintiff's ability to do business was the allegations contained in that indict-

ment pertaining to Pro–Mark's alleged fraudulent conduct, and not the suspension by HUD of the proposed contract. Thus if Pro–Mark's "freedom to take advantage of other government employment opportunities," *Old Dominion Dairy,* 631 F.2d at 964, was "effectively foreclosed," *id.,* that foreclosure was the result of the indictment, and not the suspension by HUD of one proposed contract. And the court would observe that in any event, plaintiff has not alleged or suggested that it attempted to secure other contracts—government or otherwise—but was denied such business because of the suspension. The court concludes, based on the foregoing, that no liberty interest was implicated by the suspension. Plaintiff's due process claims, therefore, fail.[2]

## HUD REGULATIONS: NOTICE AND HEARING

■ Plaintiff appears to suggest that the May 10, 1989 letter notifying Pro–Mark of the suspension of the processing of the contract was tantamount to a Limited Denial of Participation under 24 C.F.R. Part 24, Subpart G, and should therefore have been attended by the notice and hearing provided for by 24 C.F.R. §§ 24.711 and 24.712. The short answer to this argument is that the letter was nothing more than it purported to be: HUD's suspension of the processing of a potential contract with plaintiff. It did not purport to restrict Pro–Mark's participation in agency programs for a specified period of time, which is the office of a Limited Denial of Participation. *See* 24 C.F.R. § 24.710. Therefore, the notice and hearing requirements established by the regulations were inappli-

cable. Plaintiff's contention in this regard is thus rejected.

## WRONGFUL ISSUANCE OF LIMITED DENIAL OF PARTICIPATION

■ Plaintiff includes in its complaint a charge that defendants wrongfully issued a Limited Denial of Participation against plaintiff. It seems that plaintiff's allegation in this regard refers to the May 10, 1989 letter notifying plaintiff of the suspension of contract processing rather than the June 12, 1990 Limited Denial of Participation issued against Pro–Mark. However, the court has already determined that the May 10, 1989 letter was not equivalent to a Limited Denial of Participation. The court will thus assume that plaintiff's complaint is that the June 12, 1990 Limited Denial of Participation was wrongfully issued. Plaintiff does not dispute that a conference was held in connection with the Limited Denial of Participation on August 6, 1990 *in which the Limited Denial of Participation was upheld;* plaintiff did not appeal that decision in accordance with the procedures provided by 24 C.F.R. § 24.713. The decision is not subject to review by this court.[3]

## BREACH OF CONTRACT

■ The plaintiff's complaint clearly alleges a claim for breach of contract, reciting in paragraph seven that "[s]uspension constitutes a breach of contract for which the [Plaintiff] [is] entitled to damages." However, in its response brief, Pro–Mark states that it "has not filed an action based upon contract damages." While plaintiff has apparently evidenced an intention to

---

**2.** The court notes the following simply as an aside. Plaintiff states that HUD gave no reason, explanation or forewarning of the suspension to Pro–Mark and that HUD gave Pro–Mark no notice whatsoever of HUD's inquiry into the company's integrity or of the suspension. However, plaintiff was notified of the fact of and the reason for the suspension by Harris' May 10, 1989 letter. And, correspondence from plaintiff in response to that letter indicated that Pro–Mark had been aware of the investigation of its role in the *Gilliam* matter when Leslie Range stated, "[f]rom the very beginning, I have cooperated fully and completely with the United States Attorney, the Federal Bureau of Investiga-

tion, and your own Inspector General's office. I have provided full disclosure of all facets of my involvement, not only with [HUD], but also with Mr. Gilliam."

**3.** The court notes that it would be hard-pressed in any event to conclude that the decision was arbitrary or capricious in light of Gilliam's testimony that Leslie Range gave him money to secure a HUD contract for Pro–Mark. *See Old Dominion Dairy,* 631 F.2d at 960 (standard of review of decisions by government contracting officers arbitrary and capricious).

abandon any claim predicated on breach of contract, in an effort to comprehensively treat the present motions, the court concludes, for reasons stated *supra,* that plaintiff's breach of contract claim is without basis and must fail. That is because there was no contract between the parties and absent a contract, there could be no breach.

## CONCLUSION

Based on the foregoing, it is ordered that plaintiff's motion for summary judgment is denied; defendants' motion for summary judgment is granted.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

ORDERED.