CLAY, Circuit Judge,
dissenting.
Today the majority relies on assertions that are unsupported by the record, misconstrues the question presented, and ignores circuit precedent, all in effort to justify diluting the requirements of procedural due process so that they can find against plaintiffs whom they do not consider particularly sympathetic. Because the uncontested facts demonstrate that the City’s efforts to notify the Yangs do not pass constitutional muster, I respectfully dissent.
I.
This case is before us after both parties moved for summary judgment and the district court ruled in the City’s favor. When faced with cross-motions for summary judgment, “the court must evaluate each party’s motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.” B.F. Goodrich Co. v. U.S. Fitter Corp., 245 F.3d 587, 592 (6th Cir.2001) (internal quotation marks omitted).
A more accurate and complete statement of the factual background of this case is necessary in order to highlight the unsubstantiated facts relied upon by the majority to justify the demolition of the Yangs’ property.
Ming Kuo and Julie Yang have owned the commercial space located at 2675 28th St. S.W., Wyoming, Michigan 49519 (the “property”) for more than twenty-five years. The building on the property housed a succession of restaurants until the most recent one went out of business in February 2011. By that time, the Yangs had already listed the property for sale with a realtor.
A city inspector visited the property in October 2011. The inspector documented a number of ordinance violations, characterized the property as abandoned, and posted an abandoned structure notice somewhere on the property. (Presumábly the property was in fine shape eight months prior when it was licensed as a restaurant serving the City’s residents and visitors.) Within days of the inspection, the City erroneously mailed an abandoned structure notice to a prior owner, Joseph Gordon, at the property’s address.
Thereafter, the City dispatched inspectors to examine the property on a monthly basis. During the July 2012 inspection, a municipal employee determined that the structure on the property met the definition of a “Dangerous Building” under the City Code, and posted a “repair/demolish” notice somewhere on the property.[1] R. 48-13 at 3. There is no indication in the record as to where on the grounds the notice was posted, nor is there anything in- *607 the record detailing the substance of the notice. The majority claims to know what these types of posted notices “generally say,” but the record entry cited is an entirely separate mailed notice that the Yangs never received. Op. at 603 (citing R. 48-15 at 2-3).
In September 2012, the City realized that the repair/demolish and posting notices had been erroneously mailed to the prior owner, so it resent both notices by certified mail to the Yangs’ residence in Grand Rapids, Michigan. Among other things, the notices advised that an inspection was made and, as a result of the inspection, the structure on the property was determined to be a “Dangerous Building” as defined by the City Code. R. 48-15 at 2. The notices also identified the specific provisions of the Code that the structure violated, indicated that the violations had to be corrected or the structure demolished by October 12, 2012, explained that the order was appealable, advised that the Yangs should inform the City whether they intended to comply with the order, and identified the consequences of a failure to comply. However, the Yangs never received this correspondence; the post office subsequently returned the September 2012 notices to the City as “return to sender” “unclaimed” “unable to forward.” R. 48-19 at 2.
In October 2012, the city mailed notice of a November 1, 2012 hearing before the City Board of Housing Appeals regarding the property. The letter was sent to the Yangs at their home address by regular mail. The post office did not return this October 2012 letter.
At the hearing on November 1, 2012, James DeLange, the Chief Building Inspector, informed the Board of Housing Appeals that the September 2012 certified letter sent to the Yangs had not been claimed. He explained that the building had been vacant for more than a year, had structural damage, and was otherwise dilapidated. He also informed the Board that the Yangs were paying the taxes on the property. The Yangs were not present at this hearing. Nonetheless, the Board of Housing Appeals approved demolition of the building.
Less than a week after the hearing, the City sent a letter to the Yangs by regular mail stating that the Board of Housing Appeals had affirmed the City’s order to demolish the building; The post office did not return this letter to the City.
After the November 1, 2012 hearing, the City solicited bids for demolition of the building. The contract was awarded to the lowest bidder, and the structure and parking lot were razed in January 2013. The Yangs were alerted to the demolition by a phone call from a business acquaintance who happened to be passing by the property and was surprised that it was being leveled.
The Yangs filed suit in June 2013, alleging that the City violated their constitutional right to procedural due process when it failed to provide adequate notice and afford an opportunity to be heard prior to the bulldozing of the property. At the close of discovery, the parties filed cross-motions for summary judgment, and the district court ruled in the City’s favor. The Yangs ask us to reverse.
II.
This case is about procedural due process, the basic tenets of which are well-known. “[Pjrior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide ‘notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and *608 afford them an opportunity to present their objections.’ ” Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 795, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). The Yangs challenge the content of the City’s notices and the means by which the notices were transmitted. Because the content of the notices that the Yangs presumably received are either unknown or plainly insufficient, I would reverse the district court.
“Notice must be one which is designed to actually inform the [interested party] of the [potential deprivation], and the reason for [it.]” Palmer v. Columbia Gas of Ohio, Inc., 479 F.2d 153, 166 (6th Cir. 1973). If the interested party is not informed prior to the hearing of the reason for the proposed deprivation, the opportunity to be heard and present objections is rendered illusory. See Transco Sec., Inc. of Ohio v. Freeman, 639 F.2d 318, 324 (6th Cir.1981) (“Without a clear understanding of at least some of the facts which comprised the grounds for [the impending deprivation], the-opportunity to present information is a meaningless one.”); Eaton v. Charter Twp. of Emmett, 317 Fed.Appx. 444, 448 (6th Cir.2008) (explaining that “the general notice and hearing requirements imposed by the Due Process Clause” include “a reasonably definite statement of the charge or charges against [the interested party]” so that he can “ap'pear [at the hearing] and offer any objections”); cf. Brody v. Vill. of Port Chester, 434 F.3d 121, 130 (2d Cir.2005) (“notice must ... convey the required information” and “Mullane [v. Central Hanover Bank & Trust Co.] requires as much notice as is practicable to inform a condemnee of legal proceedings against his property” (emphasis added) (internal quotation marks omitted)).
The content of the September 2012 notices sent to the Yangs’ residence appear to satisfy the Fourteenth Amendment’s notice requirement. It advised of the threatened action, the reasons for it, and how it could be contested. Unfortunately for the City, these notices were returned as unclaimed. And “when mailed notice ... is returned unclaimed, the [government] must take additional reasonable steps to attempt to provide notice to the property owner.” Jones v. Flowers, 547 U.S. 220, 225, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006).
The majority holds that the posted October 2011 abandoned structure notice, the posted July 2012 order to repair/demolish, the October 2012 hearing notice sent by regular mail, and the November 2012 demolition notice also sent by regular mail, all establish that the City provided the Yangs with the process they were due. I disagree. '
1. The posted notices. The content of the October 2011 abandoned structure notice is a mystery because it is not in the record. Thus, it is impossible to determine if this notice was constitutionally adequate, and it would violate basic tenents .of summary judgment to simply assume that the notice supports the City’s position, see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Similarly, and contrary to the majority’s suggestion, the substance of the July 2012 order to repair/demolish posted on the property is also unknown. So again, there is no basis by which we can assess the adequacy of this notice.
2. The hearing notice. The October 2012 hearing notice, which was sent by regular mail to the Yangs’ home address, was unequivocally deficient. It did, however, provide some information. The “Re:” line of the hearing notice listed the *609 address of the property. R, 48-20 at 2. The notice also informed that a hearing before the Housing Board of Appeals would be held on November 1, 2012, at 7:00 p.m. at City Hall. The notice explained that the purpose of the hearing was to provide a forum for “all interested parties regarding the City’s Notice to Repair or Demolish the structure(s), in conformity to Chapter 10 of the Code of the City of Wyoming.” Id. The hearing notice further advised that the Yangs had the right to attend the hearing, present evidence, and have an attorney present.
Contrary to the majority’s assertion, the hearing notice did not alert the Yangs to “inspection-related problems with the property,” Op. at 603; indeed, the word “inspection” is never used in the letter, see R. 48-20 at 2. The hearing notice did not provide any reason at all for the impending deprivation. It simply informed the Yangs that there would be a hearing at which they could present evidence regarding the City’s September 2012 order to repair/demolish the structure located on the property. The September 2012 order was not attached to this hearing notice. And as previously discussed, the Yangs never received the September 2012 certified mailing, which advised of the City’s inspection of the property, the result of that inspection, and the specific provisions of the Code that the structure violated. No such details were provided in the hearing notice.
We have previously held that “general notice” does “not permit adequate preparation for participation in a meaningful way in any forthcoming hearing,” and therefore it does not satisfy due process. Tmnsco, 639 F.2d at 323. In fact, we, along with our sister circuits, have consistently required specific reasoned notice when the government seeks to take action adversely affecting a person’s protected property interest. See, e.g., Garcia v. Fed. Nat. Mortg. Ass’n, 782 F.3d 736, 741-42 (6th Cir.2015); Brody, 434 F.3d at 130; Flaim v. Med. Coll. of Ohio, 418 F.3d 629, 638-39 (6th Cir.2005); Rosen v. Goetz, 410 F.3d 919, 931 (6th Cir.2005) (per curiam); Hamby v. Neel, 368 F.3d 549, 562 (6th Cir.2004); Jefferson v. Jefferson Cnty. Pub. Sch. Sys., 360 F.3d 583, 585 (6th Cir.2004); Pope v. U.S. Postal Serv., 114 F.3d 1144, 1148 (Fed.Cir.1997); Buckner v. City of Highland Park, 901 F.2d 491, 492-94 (6th Cir.1990); Holbrook v. Pitt, 643 F.2d 1261, 1281 (7th Cir.1981).
In the absence of compelling facts in this case, the majority posits a hypothetical that is a far cry from what happened here. Op. at 604-06. They ask us to imagine a scenario where the government acknowledges that the plaintiff did not receive the original, detailed, and specific notice, so it follows up with a letter in which it asks the plaintiff to call city hall so that it can relay the information contained in the original notice. Id. Tellingly, the majority concedes that the information the imaginary plaintiff would receive in the phone call from tiie government is “necessary”. Id. at 605. On that point, we agree. It is indeed necessary for a property owner to be provided with the reason(s) for an impending deprivation so that he can adequately prepare for the forthcoming hearing. Palmer, 479 F.2d at 166. And it is unequivocally the government’s burden to provide adequate notice; the onus is not on the aggrieved to investigate (or divine) precisely why the government plans to deprive him of his protected property interest. See Mullane, 339 U.S. at 314, 70 S.Ct. 652. The law in this Circuit is well-settled — “the purpose of notice is to apprise the affected individual of, and permit adequate preparation for, an impending hearing.” Transco, 639 F.2d at 323.
*610 The skeletal hearing notice sent by the City did not provide enough information. The. Yangs were not provided with the reasons the City was contemplating taking some action against their property. The bald reference to Chapter 10 of the City Code was not sufficiently specific, as Chapter 10 consists of at least six potentially applicable articles, four of which also incorporate the analogous provisions of the state code. This lack of specificity rendered the hearing notice fatally deficient, and the subsequent hearing was therefore meaningless because the Yangs could not competently prepare for it. More damning still, the City learned by the time of the hearing that the certified letter containing the detailed order to repair/demolish had been returned as unclaimed.
The majority, singularly focused on “reasonable efforts,” makes much of the fact that the City also sent the hearing notice to the Yangs’ realtor.[2] Because the notice sent to the realtor was identical to the constitutionally deficient letter sent to the Yangs, it is immaterial whether the City’s act of sending it to the realtor was “a mere gesture.” Op. at 604. Insufficient notice does not suddenly become sufficient because it is sent to multiple potentially interested parties. Again, the question in this case is not only about the adequacy of the form of notice; it is also about whether the notice informed.
3. The demolition notice. The November 2012 demolition notice informed the Yangs of the outcome of the hearing — the City’s order to demolish the structure on the property was affirmed, and the demolition would be completed at the convenience of the lowest bidding contractor. The letter also advised the Yangs of their right to file an appeal in the county circuit court within thirty days.
Although the demolition notice explicitly informed the Yangs that the City was going to demolish the property, it suffers from the primary defect identified in the October 2012 notice in that it does not explain the basis for the City’s decision. The letter states that the “Board of Housing Appeals affirmed the City’s Notice and Order to Demolish,” R. 48-22 at 2, but the Yangs never received that detailed notice, and the Board was well aware of this fact.
The majority, plainly contemptuous of the Yangs’ seeming inaction, holds that because the physical demolition was still pending and the Yangs had the opportunity to appeal the Board’s decision, the appellate hearing would have provided them the process they were due. It is, in fact, confounding that the Yangs took no action in response to either the October 2012 or November 2012 notices and made no attempt to contact the City until after the demolition was completed in January 2013. However, the majority’s focus on this point confuses the issue. We are not presented with a challenge concerning the availability of a pre-deprivation hearing. The issue before the Court is whether the City’s notices satisfied due process, and the Yangs’ behavior has no bearing whatsoever on that question. The City was constitutionally required to use reasonable efforts to notify the Yangs that it planned to demolish their property and to provide the reason(s) for its proposed course of action. *611 The City failed to do the latter, and this ends the inquiry.
Even considered in the aggregate, the notices sent by the City were not enough to satisfy its constitutional obligation. Although there is no basis to attribute a lack of good faith to the City in its efforts to inform the Yangs of the impending demolition, the record we have before us demonstrates that the various postings and mailings, even cobbled together, lack any information regarding why the City wanted to demolish the property. The majority fixates on the number of notices that were posted and mailed; I am at loss for yet another way to explain that the quantity of notice is wholly irrelevant to the assessment of the quality of notice, ie., whether the reason(s) for the proposed deprivation were provided.
At this point it is worth emphasizing that all the City had to do to comply with due process is send the September notices (two two-page documents) by regular mail to the Yangs’ home address — an endeavor that presumably would have taken less than five minutes and cost less than $1. Incredibly, the majority finds this to be too heavy a burden for the City to bear before commissioning a $22,500 demolition of private property.
III.
The majority takes what is otherwise an unremarkable property dispute and uses it as a vehicle to drastically reshape the law of procedural due process and shift the burden from government to citizen. According to the majority, the government discharges its constitutional burden when it mails a postcard that simply reads, “The [governmental unit] is contemplating [taking said action] against [property address],” as long as a phone number is included in the letterhead. See Op. at 603-04, 604-06.
Ignoring the factual deficiencies in the majority opinion, its conclusion ultimately rests upon two judgments: (1) the Yangs were not sufficiently diligent in following up with bureaucratic notices; and (2) the Yangs did not stop by to check on their vacant and for-sale commercial property often enough. The question the majority leaves unanswered for the millions of property owners in this Circuit is this: how diligent is diligent enough?
Are commercial property owners obligated to inspect their lot once every six months? Once every three months? Once a week? Does the frequency change if it is a summer cottage in northern Michigan? What about a farm in Appalachian Ohio? Presumably property owners are at their primary residence nearly every day and will not have to face such uncertainty regarding their homes. Beware taking an extended vacation, though. Or at least reread the majority opinion before you do and try to discern how often you will need to call the city, the county, and the state, to remind them that you still value your property (and to provide a temporary forwarding address for government correspondence). This is not mere rhetorical flourish — in this very case, the property went from being licensed by the government as fit for commercial food service to being condemned by the government as unfit for habitation in just a few months; it was reduced to a pile of rubble not Wng thereafter. It seems unlikely that the condition of the property could have deteriorated so drastically in such a short time.
IV.
The undisputed facts in this case reveal that the notices that the Yangs presumably received provided less information than the average parking ticket. The ma *612 jority errs in holding that such scant notice satisfies due process. I therefore dissent.

. Later that same month, the City sent a repair/demolish notice and a posting notice to Joseph Gordon at the property address by certified mail. The United States Postal Service returned both notices as "unable to forward” and "vacant.” R. 48-12 at 2.

. The majority suggests that mailing notice to the realtor was "eminently” reasonable because the return of the certified mailing could only mean one of two things — that the Yangs actively refused to accept the City’s correspondence or that they no longer lived at their Grand Rapids address. Op. at 603-04. In the majority’s rush to ascribe a malign- motive to the Yangs’ behavior that has no basis in the record, they overlook an entirely plausible alternative theory — that the Yangs simply were "not home when the postman called and did not retrieve the letter at the post office,” Jones, 547 U.S. at 234, 126 S.Ct. 1708.