**J.O.M. CORPORATION, Plaintiff,**

v.

**DEPARTMENT OF HEALTH OF the STATE OF NEW YORK; David Axelrod, M.D., Commissioner of Health; Mark Adler, Investigation Specialist/WIC; and Dr. Martin Luther King Health Center, Defendants.**

**No. 88 Civ. 6538 (CSH).**

United States District Court, S.D. New York.

Oct. 12, 1988.

Hackert & Flamm, New York City, for plaintiff; Leonard Flamm, Roger Bernstein, Mitchell Mund, of counsel.

Robert Abrams, Atty. Gen., New York City, for defendants; Susan Watson, Anne Haskell, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

By order to show cause heard September 22, 1988 and again on the 26th of September as well as on the 5th and 11th of October, 1988, plaintiff moves this Court to enjoin defendants preliminarily from discontinuing its participation in the federally-funded assistance benefits program entitled Special Supplemental Food Program for Women, Infants and Children ("WIC program"). Defendants oppose plaintiff's motion for injunctive relief and cross-move for summary judgment[1] pursuant to Rule

---

1. Defendants' motion papers term their motion a "motion to dismiss" pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, but the relief requested is in actuality an application for summary judgment. Defendants' motion for summary judgment, not yet having been fully briefed, will not be decided at this time. The only issue resolved by this Opinion is plaintiff's application for preliminary injunctive relief.

56(b) of the Federal Rules of Civil Procedure.

*Background*

The WIC program is a federally-funded, but state administered program whose purpose is to provide food supplements to eligible low-income pregnant women, breast-feeding mothers, infants, and children up to five years old. Federal Child Nutrition Act of 1966 as amended, 42 U.S.C. § 1771 *et seq.* Families eligible for participation in the WIC program are issued WIC checks which can be used to purchase designated foods at stores authorized to redeem them. The stores then deposit the WIC checks in accounts maintained at commercial banks— the banks credit the shopowners' accounts and themselves receive payment from the State of New York.

The Department of Health ("DOH"), the state agency responsible for the administration of the WIC program, contracts with local agencies to oversee the operation of the program in individual neighborhoods. Such agencies determine which individuals are eligible for participation in the WIC program and they issue WIC checks accordingly.

So called "food vendors" are required to meet various DOH criteria before they can be certified as stores authorized to redeem WIC checks. 10 N.Y.C.R.R. § 60–1.13. Vendors that are authorized by the DOH to redeem WIC checks must sign a contract with the local agency responsible for the administration of the program in their neighborhood.

Plaintiff JOM is a New York corporation that operates a supermarket at 1188 Webster Avenue in the borough of the Bronx in New York City. JOM operates its supermarket in a low-income neighborhood and services a poor clientele.

On August 16, 1985, JOM entered into a vendor contract with the Dr. Martin Luther King Jr., Health Center ("Center"), the WIC local agency in JOM's area, for participation in the WIC program. Paragraph 1 of the contract provided in substance that it would remain effective from year to year subject to the availability of federal monies. Paragraph 32 provided:

> Vendor or the State may terminate this contract for cause by giving 30 days written notice to the other party of its intention and reason for termination. From the perspective of the State cause as used in this section may include but not be limited to: (1) prices for WIC foods that are consistently in excess of the average price charged for the same foods by other WIC vendors in the area; (2) Consistently low volume of WIC checks redeemed by the vendor.

In order to remain a vendor in the WIC program, JOM signed a new vendor contract with the Center on September 26, 1986. This contract provided in pertinent part:

4. The contract will *automatically expire one year from the date of signature* by the authorized representative of the Local Agency.

5. *Non-renewal* of the contract by either party (Local Agency or Vendor) *may be without cause.*

6. In the event of non-renewal of the contract, *neither the Vendor or the Local Agency shall be entitled to a hearing to contest the non-renewal.* The State, Local Agency and the Vendor have *no obligation to renew the contract.*

38. The Vendor has a *right to a hearing* before an Administrative Law Judge of the Department of Health *to contest disqualification or termination from the WIC Program during the contract performance period.*

40. Nothing herein shall prevent the State Health Department from taking any action to mandate the Local Agency not to renew the Vendor's contract to participate in the WIC Program.

(emphasis added).

On June 21, 1988, plaintiff JOM was served with a Notice of Hearing and Statement of Charges which alleged seven separate contract and regulatory violations.

Disqualification[2] proceedings were begun against plaintiff JOM based on these alleged program violations. The DOH regulations provide that a food vendor is entitled to a hearing, upon proper notice (15 days prior to the scheduled date of the hearing), if the DOH intends to *disqualify* a food vendor from continued participation in the WIC program. 10 N.Y.C.R.R. § 60–1.11(b). Such notice was given and a hearing date was initially set for August 10, 1988, but was adjourned until September 15, 1988 and, after one day of testimony, was postponed again until November 21, 1988. As things stand now, disqualification proceedings will resume at the hearing scheduled for November 21, 1988.

An Article 78 proceeding was brought in State Supreme Court, Bronx County before Justice Howard R. Silver when the DOH refused payment of certain WIC checks during its investigation of the charges that ultimately led to the start of disqualification proceedings against JOM. That action was settled by stipulation, which provided in part that: "[i]f petitioner is charged with any violations of the W.I.C. program subsequent to or as a result of the audit, any *disqualification* will be stayed pending a final determination." (emphasis added). In accordance with the stipulation, JOM has not been disqualified as a final determination has not yet been reached and cannot be before the hearing currently scheduled for late November.

On August 1, 1988, JOM was informed by letter from the Center of its intention not to renew the 1986 contract, but rather to let the most recent one year term running from September 26, 1987 to September 26, 1988 expire.[3] The letter reads:

This is to advise you that as per clause 40 of the W.I.C. vendor contract the New York State Health Dept. has advised us *not to renew* your vendor contract *due to significant contract violations.*

Because of these violations, you are not entitled to a fair hearing regarding this matter as per clause 6 of the contract. You will be *terminated as of September 26, 1988,* and your vendor stamp should be returned to our local agency within 15 days of the contract date.

In addition, you must stop accepting W.I.C. vouchers from the effective date of the *non-renewal;* as well as that the New York State Health Dept. will stop paying all W.I.C. vouchers redeemed under your store's vendor number effective as of the sixth (6th) day after the date of *non-renewal.*

Please remember that this *non-renewal* is irrespective of any litigation between the New York State Dept. of Health and JOM Food Corp. (emphasis added).

The letter, written to Mr. Ramon Vargas of JOM, suggests that the decision not to renew JOM's contract was at least partially based on the contract violations which in turn form the basis of the disqualification proceedings currently pending against JOM. While, as the DOH observed at the hearing, the agency is a separate entity, the letter recites that it was written at the Department's directions.

---

**2.** Plaintiff JOM urges upon this Court, via submission of an excerpt from Funk & Wagnalls New Comprehensive International Dictionary of the English Language 369 (Encyclopedic Edition 1977), that disqualification is: "[t]he act of debarring a person from participation in a contest or enterprise, or from sharing in the prizes or rewards, due to an infraction of rules or other irregularity." This is indeed the definition of disqualification.

Disqualification in the context of the WIC program means a disallowance of the vendor's further participation in the program for a period of up to three years as a result of which disqualification from the food stamp program may also result.

**3.** Non-renewal of the contract is a termination of participation in the WIC program for a maximum of one year, after which the vendor may re-apply to the local agency for renewal of his vendor status. Unlike disqualification, non-renewal cannot affect participation in the food stamp or any other government program.

On September 26, 1988, a ten day extension on the contract was granted until October 6, 1988 in order to permit papers to be submitted in the instant case. Again on October 5, 1988, counsel for the DOH assured the Court that no action would be taken concerning the non-renewal of JOM's contract until a decision had been reached in this matter.

## Discussion

The Second Circuit has set out two alternative tests on the question of whether a preliminary injunction should issue.

The settled rule is that a preliminary injunction should issue only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Sonesta Int'l Hotels Corp. v. Wellington Assocs.*, 483 F.2d 247, 250 (2d Cir.1973) (emphasis in original).

■ I am satisfied that the plaintiff has carried its burden under both tests as to the injury component—in other words, that possible irreparable injury will inure to plaintiff should injunctive relief not issue [4] and that the balance of hardships points in plaintiff's favor under the second test. The next inquiry is whether plaintiff has made a sufficient showing as to either likelihood of success on the merits or a sufficiently serious question going to the merits as to make it a fair ground for further litigation.

■ Plaintiff contends that it has a constitutionally protected property interest in continued participation in the WIC program, which cannot be extinguished without procedural due process. *See, e.g., Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). From where does JOM derive such a property interest?

The contract entered into between JOM and the Center in August of 1985 stated that it would continue from year to year subject to the availability of federal funds and could be terminated for cause—the clear inference being that it could not be terminated without cause. Plaintiff JOM and the Center entered into a new agreement in September of 1986, which did away with these provisions and allows for mere "non-renewal" of the contract at the end of a one year period. It is under this most recent contract that defendant DOH claims to be exercising its right not to renew the contract.[5]

Under both the 1985 and 1986 contracts, as well as under state regulations, JOM is entitled to a fair hearing if the DOH attempts to disqualify it from continued participation in the program. 10 N.Y.C.R.R. § 60–1.11(a). JOM contends that the letter of August 1, 1988 sent to Mr. Vargas attempts to cloak a disqualification in the guise of non-renewal. The letter states that the decision not to renew JOM was based on "significant contract violations." As the dictionary definition provided by plaintiff sets out, where a person is debarred from continued participation in an

---

4. Plaintiff JOM has sufficiently demonstrated by affidavit that the discontinuance of its participation in the WIC program would most likely have a profound effect on its business because of the "ghetto economy" in which the store exists and the dependence of its customers on government subsidies of this nature. *See* Vargas Affidavit at 2–3.

5. There is a serious question in my mind as to whether the 1986 contract is that which governs the relationship between JOM and the DOH. If in fact the 1985 contract conferred a property right upon plaintiff JOM, then conditioning its continued participation in the WIC program upon the signing of a new contract which did not provide for a hearing in the event of a termination might well be an invalid exercise of state power under the due process clause of the fourteenth amendment.

Of course, if the 1985 contract governs the relationship between JOM and the DOH, then the instant case comes squarely within the holding of *Cleveland Bd. of Educ. v. Loudermill*, which addresses the question of what "pretermination process must be accorded a public employee who can be discharged only for cause." 470 U.S. 532, 535, 105 S.Ct. 1487, 1489, 84 L.Ed.2d 494 (1985).

However, federal courts have a "strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration." *Ulster County Court v. Allen*, 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1978) (citation omitted).

In the case at bar, plaintiff's affidavit does not explicitly claim coercion in respect of the execution of the 1986 contract; the argument is only a conclusory submission of counsel in the briefs. There is no evidence of plaintiff's contemporaneous protest when confronted with the 1986 contract. In any event, in the view I take of the 1986 contract, I need not, and should not, reach the issue.

exercise as a sanction "due to an infraction of rules or other irregularity," that is a disqualification. The DOH then is indeed attempting to disqualify plaintiff JOM without affording it the procedural protection due under the fourteenth amendment.

This is a case on par with *Myers & Myers, Inc. v. United States Postal Service*, 527 F.2d 1252 (2d Cir.1975), wherein the Second Circuit ruled that a former "star route" carrier was entitled to certain procedural safeguards before his contract with the postal service could be terminated—this in spite of the fact that the postal service labelled the termination a mere non-renewal. The court of appeals held that:

> A star route contractor cannot be said to hold a statutory entitlement to contract renewals, ... or even a reasonable expectation that his business relationship with the Postal Service has become permanent in nature.
>
> \*    \*    \*    \*    \*    \*
>
> It is, therefore, true that the Postal Service is free to refuse to renew any particular star route contract without first granting a hearing. But this does not mean that these appellants were disentitled to a hearing. They have alleged facts which indicate that the Postal Service refusals to renew the star route contracts in their case were part of a 'sanction' taken against them for claimed irregularities in their firm's operating procedures.
>
> \*    \*    \*    \*    \*    \*
>
> Under the Postal Service regulations, appellants had a right to procedural safeguards before the Service debarred their firm, *de jure* or *de facto*, from future consideration as an applicant for star route contracts. The fact that the Service did not label its action as a 'debarment' is inconsequential, for the Service cannot bypass these important procedural safeguards merely by omitting the formal label to the sanction applied.

*Myers*, 527 F.2d at 1258–59 (citations omitted) (emphasis in original).

In the instant case it is clear that the DOH seeks to disqualify JOM from continued participation in the WIC program.[6] It is also clear that the DOH's motivation in the so called non-renewal of JOM is based on alleged violations, be they the same or different from those that underpin the disqualification proceedings. If the alleged violations are the same as those underpinning the disqualification proceeding, then the DOH is attempting to put the cart before the horse in that they are effectively penalizing JOM for these alleged violations before the hearing that it is constitutionally entitled to. If the alleged violations are different from those underlying the disqualification proceeding, then the DOH is attempting to thwart JOM's constitutional right to a fair hearing altogether. Neither of these scenarios is a constitutionally acceptable one.

Merely naming the termination procedure used as one of non-renewal[7] cannot limit the constitutional protection owed the plaintiff. DOH cannot be allowed to "wrest a government benefit from an individual claimant through definitional gamesmanship." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 448 (2d Cir.1980). The fourteenth amendment will not permit it.

### Conclusion

Plaintiff has established a constitutionally protected property interest in that it has demonstrated a set of "rules or mutually

---

**6.** Counsel for defendant represented to this Court at oral argument on September 22, 1988 that the DOH intends to proceed with the disqualification hearing currently scheduled for November 21, 1988 in order to pursue removal of JOM from the WIC program for the maximum allowable three year period. Disqualification for cause is of course legitimate under both the 1985 and the 1986 contracts.

**7.** The fact that federal regulations provide that "[n]either the State or local agency nor the vendor has an obligation to renew the vendor contract agreement" does not alter this Court's conclusion. *See* 7 C.F.R. § 246.12(f). Even assuming that the 1986 contract providing for non-renewal is valid as between JOM and the Center, the DOH cannot invoke that provision in an attempt to circumvent the disqualification hearing to which JOM is constitutionally entitled.

explicit understandings that support its claim of entitlement to the benefit." *Perry*, 408 U.S. at 601, 92 S.Ct. at 2699. A vendor may not be disqualified from continued participation in the WIC program without first getting a fair hearing. Such a hearing must be afforded JOM before the DOH can effectively disqualify it. The fact that the DOH chooses to cloak its termination of JOM in the language of non-renewal is irrelevant where it is readily apparent that the debarment is clearly a sanction for as yet unspecified contract violations.

Given that plaintiff has established a constitutionally protected property interest in its continued participation in the WIC program, there exists at the very least sufficiently serious questions going to the merits to make them a fair ground for litigation. As noted, the balance of hardships tips decidedly in plaintiff's favor, given the showing of irreparable harm.

Therefore, plaintiff's motion for preliminary injunctive relief is granted. Settle an order on three (3) days notice within thirty (30) days of this order.

SO ORDERED.