**SOUTHEAST KANSAS COMMUNITY ACTION PROGRAM, INC., Plaintiff,**

**v.**

**Richard E. LYNG, in his Office Capacity as Secretary of Agriculture of the United States, Stanley C. Grant, in his Office Capacity as Secretary of the Kansas Department of Health and Environment and Their Agents, Employees and Those Working in Concert with Them, Defendants.**

No. 88–1562.

United States District Court,
D. Kansas.

Feb. 7, 1991.

William E. Metcalf, Metcalf and Justus, Topeka, Kan., for plaintiff.

Marvin G. Stottlemire, Kansas Dept. of Health and Environment, Topeka, Kan., for Stanley C. Grant et al.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., and John L. Daugherty, Staff Atty., U.S. Dept. of Agriculture, Washington, D.C., for Richard E. Lyng.

## MEMORANDUM ORDER

CROW, District Judge.

This matter comes before the court upon the defendants' motions for dismissal of the plaintiff's amended complaint. Southeast Kansas Community Action Program (SEK–CAP), a not-for-profit corporation, is a local agency which formerly received grant funds under the Supplemental Food Program for Women, Infants and Children (WIC).[1] The defendants are the Secretary of Agriculture and the Secretary of Kansas Department of Health and Environment (KDHE). This federal question case arises from the non-renewal of SEK–CAP's contract to administer a WIC nutrition program. SEK–CAP also challenges federal regulations promulgated by the Secretary of Agriculture. SEK–CAP seeks both monetary and injunctive relief.

In its amended complaint, SEK–CAP alleges five separate counts. In Count I, SEK–CAP claims that the KDHE issued a monitoring report to the public that made derogatory statements about SEK–CAP.

---

1. The purpose of the WIC program is to provide supplemental foods and nutrition education to women, infants and children "at special risk with respect to their physical and mental health." 42 U.S.C. § 1786(a). *See Alexander v. Polk*, 750 F.2d 250 (3rd Cir.1984) (discussing the WIC program).

SEK–CAP alleges that it could defend most of the charges found in that report. Apparently, that report formed the basis of the decision not to renew SEK–CAP's contract. SEK–CAP claims that it was not provided with a hearing on the issue of contract renewal or the monitoring report. SEK–CAP claims this action of the KDHE are violations of its rights under the 14th Amendment in that it was deprived of liberty and property without due process of law. SEK–CAP claims actual damages in excess of $10,000 and punitive damages in excess of $10,000.

In Count II, SEK–CAP incorporates its factual contentions in Count I, but claims irreparable injury and no adequate remedy at law and seeks a mandatory injunction compelling the defendants to continue funding until an adequate hearing is conducted on the issue of non-renewal. In Count III, SEK–CAP seeks actual and punitive damages as well as a mandatory injunction compelling the defendants to continue funding until an adequate hearing is held.

In Count IV, SEK–CAP alleges that Richard Lyng has promulgated regulations that violate the statutory mandate of 42 U.S.C. § 1986. SEK–CAP claims that it is entitled to a hearing under the statute, but that the regulations deny it of that right. SEK–CAP seeks an order declaring those regulations void and a mandatory injunction compelling the continued funding of the WIC program until an adequate hearing has been held.

In Count V, SEK–CAP claims that the regulations promulgated by Richard Lyng which establish a priority system to be used for the selection of new agencies to administer WIC programs are not authorized by Congress and that the use of the regulatory system established by the priority system has been used to deny its application. SEK–CAP seeks to declare those regulations void and an order compelling the defendants to continue funding its operation until an adequate hearing is held on the merits.

On September 30, 1988, the court conducted a hearing to determine whether SEK–CAP was entitled to a temporary restraining order. The court denied SEK–CAP's motion for a temporary restraining order.

The court, having considered the briefs of counsel and applicable law, is now prepared to rule on the defendants' motions to dismiss. "Under Rule 12(b)(6), dismissal is inappropriate unless plaintiff can prove no set of facts in support of his claim to entitle him to relief." *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472 (10th Cir.1990).

## Due Process

The protection of procedural due process is not available until the plaintiff establishes the existence of a recognized property or liberty interest. *Setliff v. Memorial Hosp. of Sheridan County*, 850 F.2d 1384, 1394 (10th Cir.1988). "[T]he range of interests protected by procedural due process is not infinite." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Corporations are persons within the meaning of the Fourteenth Amendment. *Minneapolis & S.L.R. Co. v. Beckwith*, 129 U.S. 26, 9 S.Ct. 207, 32 L.Ed. 585 (1889); *see First National Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (court rejects argument that liberty guaranteed by the Fourteenth Amendment against deprivation without due process of law only applies to natural persons); see also *Old Dominion Dairy Products Inc. v. Secretary of Defense*, 631 F.2d 953, 961–962 (D.C.Cir. 1980) (corporation may be deprived of due process liberty interest).

## Property Interest

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have legitimate claim of entitlement to it." 408 U.S. at 577, 92 S.Ct. at 2709. "The hallmark of property, the Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except 'for cause.' " *Logan v. Zimmerman Brush Co.*, 455 U.S.

422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982).

In *Superior Engineering & Electronics Co. v. Sanders*, 833 F.2d 823 (9th Cir.1987), the ninth circuit rejected the plaintiff's contention that due process required a hearing before the expiration of its term of participation in a Small Business program. The court commented:

A firm's interest in participating in the Section 8(a) Program must rise to a claim of "entitlement" in order to require fair process in determining whether termination is proper. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701–2709, 33 L.Ed.2d 548 (1972); J. Nowak, R. Rotunda & J. Young, *Constitutional Law*, § 15.3 at 549 (2ed.1983). Entitlement is determined by looking at the applicable law. If the statute creates no claim to future benefits, there is no entitlement to continued benefits. *Id.* at 550. "... [A] state may be allowed to eliminate the need for hearings to determine the basis for termination of benefits by establishing a system which clearly indicates that there is not right to continuation of benefits ..." *Id.*. The mutual negotiation of a fixed program participation term between the SBA and the participant provides clear notice that once the term has expired the participant has no right to continue receiving benefits.

*Id.* at 826–827.

■ SEK–CAP's contends that it has a property interest in continued funding due to the "existing rules and understandings" defining the WIC grant. The WIC grant contract itself does not support such a contention. The contract covered the time period from July 1, 1987 to September 30, 1988; the preamble fixed the expiration date as September 30, 1988. The contract itself clearly demonstrates that it had no entitlement to WIC grant funds beyond September 30, 1988. In short, the non-renewal of SEK–CAP's WIC contract was not a deprivation of a property interest.

### Liberty Interest

■ Notwithstanding the absence of a property interest, a procedural due process hearing may still be necessary if a liberty interest is implicated. *Rich v. Secretary of the Army*, 735 F.2d 1220, 1226 (10th Cir. 1984). In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court considered the issue of whether the plaintiff who was allegedly defamed by a flier circulated by the police department bearing his name and photograph which supposedly depicting "active shoplifters" stated a claim for relief under 42 U.S.C. § 1983 and the Fourteenth Amendment. The Court concluded that injury alone to reputation does not violate the liberty or property interests of the due process clause.

The Court stated that there is "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Id.* at 702, 96 S.Ct. at 1161. The proper remedy for such an injury is through a state tort action for defamation. *Id.* at 697–699, 96 S.Ct. at 1158–60. In *Paul*, the Court concluded that the plaintiff had suffered no constitutional injury because he could not "assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment." *Id.* at 712, 96 S.Ct. at 1166.

■ Thus, in order to present a viable liberty deprivation claim, the plaintiff must demonstrate more than a mere injury to reputation; due process requirements are not triggered unless the injury to reputation is entangled with the loss of a more tangible interest. *See Setliff*, 850 F.2d at 1396. The plaintiff is also required to demonstrate that the publication of information was false *and* stigmatizing. *See Derstein v. State of Kan.*, 915 F.2d 1410 (10th Cir. 1990); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988); *Sipes v. United States*, 744 F.2d 1418, 1421 (10th Cir.1984).

*Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), requires a plaintiff seeking to recover for deprivation of a liberty interest to allege that the defendant's "defamatory" statements are false.

The defendants in the case at bar contend that SEK–CAP has failed to allege that the monitoring review was false and defamatory. In its amended complaint, SEK–CAP alleges that the defendant's statements were "derogatory" or that it can "defend against most of the charges." In its response to the defendants' motions to dismiss, SEK–CAP states:

> In this case, so that there will be no mistake, the Plaintiff is alleging that many of the factual characterizations of the report are *untrue* and that the conclusion of the report ... is also. Clearly, such statements are defamatory and may deprive the Plaintiff form federal, state, and local grants in the future—the lifeblood of its existence. Plaintiff believes that it can establish on the record that it was clearly deprived of liberty without due process.

SEK–CAP does not identify which statements contained in the report are "false" factual characterizations. The report concludes:

> We are greatly concerned about the quality of the WIC program as administered by SEK–CAP. There are very clear and serious deficiencies in the provision of the WIC program.

The conclusion of the report is merely the opinion of the preparer's and is therefore difficult to categorize as "false". While it might be possible to end the court's inquiry of this issue at this point, SEK–CAP probably satisfies the requirements of *Codd*.

While the plaintiff's case clears one hurdle toward proving the deprivation of a liberty interest, the next two hurdles prove to be insurmountable. SEK–CAP does not allege, nor can it demonstrate that the report is "stigmatizing." In addition, even if the defendants' statements were stigmatizing, SEK–CAP cannot demonstrate that it has been deprived of a more tangible interest.

■ A statement is not stigmatizing if it merely alleges incompetence, negligence, low productivity and dereliction. *See Sullivan v. Stark*, 808 F.2d 737, 739 (10th Cir.1987). In order for a statement to be stigmatizing, a statement must allege dishonesty, stealing or some other allegation that gives rise to a "badge of infamy," public scorn, or the like. *See Wells v. Hico Independent School Dist.*, 736 F.2d 243, 256 n. 16 (5th Cir.1984); *Bailey v. Kirk*, 777 F.2d 567, 580, n. 18 (10th Cir.1985). The report, viewed as a whole, does not allege dishonesty or attach a badge of infamy, but rather suggests incompetence. The report does not stigmatize SEK–CAP, and thus no liberty interest is implicated.

■ Even if SEK–CAP's claim could survive the first two obstacles, it clearly fails on the third. SEK–CAP is unable to demonstrate that the statements of the defendant led to the denial of a protected interest without due process of law. The court has already concluded that SEK–CAP was not deprived of a property interest. SEK–CAP did not have a cognizable property interest in the continued receipt of WIC funds. Non-renewal of the SEK–CAP's grant contract did not disqualify it from further participation in WIC; rather non-renewal allowed other organizations to apply for the WIC grant contract for the 1989 fiscal year. The defendants in this case have not deprived SEK–CAP of any tangible right. The mere expectation of contract renewal does not rise to the level of a tangible right. *But see J.O.M. Corp. v. Department of Health of State of N.Y.*, 697 F.Supp. 720 (S.D.N.Y.1988).

The cases cited by SEK–CAP which recognize a deprivation of a corporation's liberty interest are distinguishable from the case at bar. The court's decision in *Southern Mutual Help Ass'n, Inc. v. Califano*, 574 F.2d 518 (D.C.Cir.1977), turned in large part on the specific terms of the grant involved in that case. In *Old Dominion* the government contracting officer declared that the plaintiff "lacked integrity" as evidenced by its past business with government. This determination actually lead to the denial of two substantial contracts which the plaintiff would otherwise have received. 631 F.2d at 962–963. The contracting officer's determination that the plaintiff "lacked integrity" specifically imputed the good name, honor and obviously the integrity of the plaintiff. In that case,

the defendant's statements stigmatized the plaintiff. Under those circumstances, the plaintiff was entitled to notice and an opportunity to be heard. In the case at bar, the defendants' statements have not resulted in the loss of any tangible right or acted as an absolute bar to obtaining grants in the future.

The third case cited by SEK–CAP in support of its liberty claim, *Transco Security, Inc. of Ohio v. Freeman*, 639 F.2d 318 (6th Cir.1981), is also distinguishable. In that case, the Government blacklisted the plaintiff, who had been dealing with the government on an ongoing basis, without affording the plaintiff procedural safeguards including notice of charges, opportunity to rebut those charges or a hearing. The court concluded that "[w]hile the deprivation of the right to bid on government contracts is not a property interest ..., the bidder's liberty interest is affected when that denial is based on charges of *fraud and dishonesty.*" 639 F.2d at 318 (emphasis added). In the case at bar, SEK–CAP has not been blacklisted, nor did the report charge fraud or dishonesty.

The court concludes SEK–CAP's interest in reputation asserted in this case is neither "liberty" nor "property" guaranteed against deprivation without due process of law.

## Standing

█ Standing to sue relates to the right to relief by one who will suffer an injury in fact. *Phico Ins. Co. v. Providers Ins. Co.*, 888 F.2d 663, 665–666 (10th Cir.1989). "For purposes of Article III of the Constitution of the United States, standing is met if a party shows that he personally has suffered some actual or threatened injury that can be traced to the challenged action and is likely to be redressed by a favorable decision." *Id.* at 666. The court is satisfied that SEK–CAP has standing to challenge the regulations and the defendants' alleged violations of those regulations. If the regulations are contrary to the authority granted the Secretary by Congress or if the regulations have been violated, SEK–CAP has suffered an injury. *See South-*

*ern Mutual Help Ass'n, Inc.*, 574 F.2d at 522–525.

## WIC Regulations

█ The letter notifying SEK–CAP that its contract would not be renewed did not state the reasons for non-renewal. As mentioned above, the monitoring report was apparently the reason for the non-renewal. SEK–CAP claims that the regulations required the state defendant to provide a reason for non-renewal. The relevant regulations provide:

> The expiration of an agreement is not subject to appeal. The State agency shall provide local agencies with advance written notice of the expiration of an agreement as required under [7 C.F.R.] §§ 246.5(e)(3)(ii) and 246.18(b)(1).

7 C.F.R. § 246.6(a). Section 246.5(e)(3)(ii) requires the state to "[p]rovide the affected local agency with written notice not less than 60 days in advance of the pending action which includes an explanation of the reasons for disqualification ..." The regulations provide for the giving of reasons only in the event of disqualification and do not appear to require the giving of reasons in the instance of non-renewal. Disqualification is "the act of ending the Program participation of a participant, authorized food vendor, or authorized State or local agency, whether as a punitive sanction or for administrative reasons." 7 C.F.R. § 246.2. The reasons for disqualification are found in 7 C.F.R. § 246.5(e). It seems clear SEK–CAP was not "disqualified" as it was able to and has reapplied for a WIC grant. In this context, non-renewal is not synonymous with disqualification. In any event, SEK–CAP was given notice of non-renewal at least 60 days in advance of expiration. The court concludes that the defendant did not violate the notification requirements.

█ SEK–CAP contends that 7 C.F.R. § 246.6 violates Congressional intent. SEK–CAP contends that both the statute and legislative history indicate that a fair hearing is required where a State takes any action which adversely affects a local agency's participation. The defendants re-

**1436**

spond that the regulations are reasonable interpretations of the authority delegated to the Secretary.

■ The Child Nutrition Act provides that the "Secretary shall prescribe such regulations as the Secretary may deem necessary to carry out this Act . . ." 42 U.S.C. § 1779. When Congress explicitly or implicitly delegates to agencies the power to elucidate a specific provision of a statute, the resulting agency action is entitled to deference. *Hecla Min. Co. v. United States*, 909 F.2d 1371, 1375 (10th Cir.1990). *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

The regulations originally promulgated by the Secretary provided for a hearing in the event of non-renewal. On July 8, 1983, the Department of Agriculture proposed to change the regulation requiring a hearing in the event of a non-renewal of a local agency contract. The Department described the purpose of the change:

> This section sets forth minimum rules that State agencies must follow when establishing a hearing procedure for local agencies or vendors whose participation is the subject of an adverse action. The current regulations provide that any such vendor or local agency adversely affected by a State decision is entitled to an impartial administrative appeal. Further, the adverse action must be postponed until the hearing decision is rendered. However, the delay of the adverse action until the hearing decision has been rendered may hamper the State agency's ability to deal effectively with abusive vendors or poorly managed agencies. This, in turn, can lead to loss of Program funds.
>
> Therefore, the Department is proposing in paragraph (a)(a)(1) that nonrenewal of a food vendor's or local agency's agreement not be subject to appeal. Aside from management consideration, appeal of nonrenewal is inappropriate since both parties to the contract have freely agreed upon an expiration date.

48 Fed.Reg. 31510 (1983) (proposed July 8, 1983). The regulation currently found at 7 C.F.R. § 246.6(a) eliminates the fair hearing requirement in the case of non-renewal.

The court concludes that this modification is not inconsistent with the statutes creating the WIC program. 42 U.S.C. § 1786(f)(9) provides:

> The State agency shall grant a fair hearing, and a prompt determination thereafter, in accordance with regulations issued by the Secretary, to any applicant, participant, or local agency aggrieved by the action of a State or local agency as it affects participation.

SEK–CAP is not an "aggrieved party" and is therefore not entitled to a hearing. SEK–CAP's contract expired by its own terms; no affirmative act was required to terminate the contract. Nor does the court view the regulations as coercive, unfair, or contrary to Congressional intent.

■ SEK–CAP also alleges that the priority system used for selecting new agencies, 7 C.F.R. § 246.5(d), is not authorized by the Child Nutrition Act. The court concludes that the regulation is within the authority of the Secretary. Section 10 of the Child Nutrition Act states that "[t]he Secretary shall prescribe such regulations as he may deem necessary to carry out this Act." 42 U.S.C. § 1779. The regulations are simply an attempt to pick the local agencies best-suited for administration of the WIC program. The court concludes the regulation reflects a reasonable interpretation of the Child Nutrition Act.

IT IS THEREFORE ORDERED that the defendants' motions to dismiss (Dk. 19 and 21) are granted.