967 F.2d 1452
 SOUTHEAST KANSAS COMMUNITY ACTION PROGRAM INCORPORATED,
Plaintiff-Appellant,
v.
SECRETARY OF AGRICULTURE OF THE UNITED STATES, Richard E.
Lyng, in his office capacity; Secretary of the Kansas
Department of Health and Environment, Stanley C. Grant, in
his office capacity; Agents and Employees, and those
working in concert with them, Defendants-Appellees.
 No. 91-3088.
 United States Court of Appeals,
Tenth Circuit.
 June 22, 1992.
 
 William E. Metcalf, Metcalf & Justus, Topeka, Kan., for plaintiff-appellant.
 Lee Thompson, U.S. Atty., and Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendant-appellee Secretary of Agriculture.
 Marvin G. Stottlemire, Kansas Dept. of Health and Environment, Topeka, Kan., for defendant-appellee Stanley C. Grant.
 Before SEYMOUR and ANDERSON, Circuit Judges, and SAM,* District Judge.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Plaintiff-appellant Southeast Kansas Community Action Program (SEK-CAP) brought this action against the State of Kansas and the Secretary of Agriculture alleging property and liberty interest deprivations resulting from Defendants' failure to renew its contract to administer a federal child nutrition program.[1] The district court dismissed the complaint on a motion filed pursuant to Fed.R.Civ.P. 12(b)(6). Southeast Kan. Community Action Program, Inc. v. Lyng, 758 F.Supp. 1430, 1436 (D.Kan.1991). We affirm.
 
 I.
 
 2
 SEK-CAP is a nonprofit corporation dedicated to implementing certain state and federal programs designed to help the poor and needy. It brought this action after the Kansas Department of Health and Environment (KDHE) failed to renew its contract to administer the Supplemental Food Program for Women, Infants and Children (WIC), which is part of the federal Child Nutrition Act. See 42 U.S.C. §§ 1771-1789; Alexander v. Polk, 750 F.2d 250, 253-55 (3d Cir.1984) (describing WIC program).
 
 
 3
 The purpose of the WIC program is to provide food and nutrition education to women, infants, and children "at special risk with respect to their physical and mental health." 42 U.S.C. § 1786(a). Although administered by state agencies, the program is federally funded. See id. § 1786(c)(1); see also 42 U.S.C. § 1786(g)(1) (outlining appropriations). The federal statute provides guidelines for the administration of the program, but allows state agencies to select the local organizations responsible for providing benefits. See 7 C.F.R. § 246.5 (1991) (outlining procedures for selection of local agencies).
 
 
 4
 KDHE first chose SEK-CAP to operate the WIC program in 1980. The most recent contract between SEK-CAP and KDHE ran from July 1, 1988, through September 30, 1988. It included a clause that allowed either party to terminate the agreement upon sixty days' notice. On July 28, 1988, KDHE drafted a letter informing SEK-CAP that the contract to administer the WIC program would not be renewed. SEK-CAP was informed that the state planned to open the bidding process to other agencies. As a consequence, although SEK-CAP was allowed to bid on the WIC program, other operators were given the same chance.[2]
 
 
 5
 In its complaint, SEK-CAP alleges that the nonrenewal decision was based on findings made in a KDHE monitoring report published in 1988. In their audit, the two authors of the report found numerous problems in the implementation of the program. The state identified problems in financial management, clinic operations, food delivery and chart review procedures. The report concluded, "[w]e are greatly concerned about the quality of the WIC program as administered by SEK-CAP. There are very clear and serious deficiencies in the provision [sic] of the WIC program." Appellant's App. at 68. Information concerning this report was available to the press through the Kansas Open Records Act. The record contains two articles from local newspapers referencing the audit. See id. at 80, 169.
 
 
 6
 SEK-CAP alleges that publication of the report, and the accompanying nonrenewal, deprived it of property and liberty interests without due process of law. Further, the corporation maintains that the Child Nutrition Act requires it be granted a hearing on the nonrenewal. Finally, SEK-CAP challenges the regulations which the Secretary of Agriculture implemented to govern the program.
 
 II.
 
 7
 As a threshold matter, we must consider whether this court has subject matter jurisdiction to consider the claims which SEK-CAP asserts against the federal defendant. See Tuck v. United Servs. Auto Ass'n, 859 F.2d 842, 844 (10th Cir.1988) (appellate court may examine jurisdiction sua sponte), cert. denied, 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989). After this appeal was filed, the court ordered the parties to submit supplemental briefs addressing whether the Claims Court has exclusive jurisdiction to consider the issues presented because SEK-CAP has requested relief which, if granted, would deplete the federal treasury. As a corollary, we must also consider whether the requested relief takes this suit outside the waiver of immunity found in 5 U.S.C. § 702. We address these issues below.
 
 
 8
 The Tucker Act provides that the United States Claims Court has exclusive jurisdiction to render judgment upon any claim against the United States exceeding $10,000 "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort." Exclusive jurisdiction therefore rests in the Claims Court if three conditions are satisfied: (1) the action is against the United States; (2) the action seeks monetary relief in excess of $10,000; and (3) the action is founded upon the Constitution, federal statute, executive regulation, or government contract.
 
 
 9
 Rogers v. Ink, 766 F.2d 430, 433 (10th Cir.1985) (citations and footnote omitted). In this case, it is undisputed that prongs one and three of the test are met. Consequently, the focus is necessarily on whether SEK-CAP's complaint seeks monetary relief in excess of $10,000.[3]
 
 
 10
 SEK-CAP's complaint does not seek compensatory damages from the federal defendant. The request is for declaratory and injunctive relief. The manner of relief requested is not, however, dispositive of whether the Claims Court has jurisdiction. "The test for determining if a case belongs in the Claims Court is whether or not 'the "prime objective" or "essential purpose" of the complaining party is to obtain money from the federal government.' " Eagle-Picher Indus., Inc. v. United States, 901 F.2d 1530, 1532 (10th Cir.1990) (quoting New Mexico v. Regan, 745 F.2d 1318, 1322 (10th Cir.1984), cert. denied, 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985)). "A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory, or mandatory relief where the thrust of the suit is to obtain money from the United States." Rogers, 766 F.2d at 434. Consequently, the Claims Court question focuses on the substance of the relief requested, rather than the language used to define it in the complaint.
 
 
 11
 In addition, the Administrative Procedure Act plays an important role in our consideration of this issue. The APA contains the waiver of sovereign immunity which allows SEK-CAP to seek review of the Secretary of Agriculture's actions.[4] 5 U.S.C. § 702. That waiver is limited, however, to those cases "seeking relief other than money damages."[5] As a consequence, if SEK-CAP's complaint is construed as one seeking "money damages," sovereign immunity bars the action. Our determination whether this suit seeks "money damages" from the federal government is, therefore, a threshold consideration.
 
 
 12
 In Bowen v. Massachusetts, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), the Supreme Court defined that term for purposes of considering immunity from suit under 5 U.S.C. § 702. The Court held that the statute allows the grant of injunctive relief, even where it results in payment from the federal treasury. Id. at 910, 108 S.Ct. at 2740. The Court adopted the following language:
 
 
 13
 The term 'money damages,' we think, normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies "are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled." Thus, while in many instances an award of money is an award of damages, "[o]ccasionally a money award is also a specie remedy." Courts frequently describe equitable actions for monetary relief under a contract in exactly those terms.
 
 
 14
 Id. at 895, 108 S.Ct. at 2732 (quoting Maryland Dep't of Human Resources v. Department of Health & Human Servs., 763 F.2d 1441, 1446 (D.C.Cir.1985)) (citations omitted).
 
 
 15
 The Bowen court rejected the argument that the Claims Court should retain jurisdiction in all suits where Plaintiff's requested relief would have an impact on the federal treasury. It stated, "[t]he Claims Court does not have the general equitable powers of a district court to grant prospective relief. Indeed, we have stated categorically that 'the Court of Claims has no power to grant equitable relief.' " Id. at 905, 108 S.Ct. at 2737 (quoting Richardson v. Morris, 409 U.S. 464, 465, 93 S.Ct. 629, 631, 34 L.Ed.2d 647 (1973)). Thus, although the immunity waiver only allows suits seeking relief other than money damages, injunctive relief, such as that requested here, is available and does not bar suit.
 
 
 16
 SEK-CAP's prayer for relief against the federal defendant seeks declaratory and injunctive relief. Specifically, SEK-CAP seeks invalidation of the federal regulations, a hearing on the nonrenewal, and an order requiring funding of the program until that hearing. The corporation argues that the Tucker Act is inapplicable because the primary purpose of the lawsuit is to receive a hearing on the nonrenewal, as distinguished from efforts to obtain further funding. The government, in turn, argues that SEK-CAP's "prime objective" is to obtain funding. Thus, it argues Claims Court jurisdiction is appropriate.
 
 
 17
 We are satisfied that the "essential purpose" of SEK-CAP's action is not to obtain compensatory damages from the Secretary of Agriculture. Counts IV and V of the complaint seek:
 
 
 18
 an Order declaring [the] regulations void, a mandatory injunction compelling Defendants to continue to provide funds for Plaintiff's operation of the WIC program until such time as an adequate hearing is held on the merits of Plaintiff's disqualification and failure to renew Plaintiff's contract, for its costs and for such other relief as the Court deems just and proper.
 
 
 19
 Appellant's App. at 5. This request for relief is equitable in nature. Thus, we hold the district court properly exercised jurisdiction over this action. See Hamilton Stores, Inc., 925 F.2d at 1279 n. 14 ("The Supreme Court has indicated the importance of district court review of agency action in preference to Claims Court Tucker Act jurisdiction."). We now turn to the merits of SEK-CAP's claims.
 
 III.
 
 20
 The district court dismissed SEK-CAP's complaint on motions filed pursuant to Fed.R.Civ.P. 12(b)(6). Lyng, 758 F.Supp. at 1436. We review this determination de novo. Morgan v. City of Rawlins, 792 F.2d 975, 978 (10th Cir.1986). Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle [it] to relief." Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, 927 F.2d 1111, 1115 (10th Cir.1991) (citing Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).[6] The counts in the complaint are separated by defendant. Specifically, the property and liberty interest due process claims are asserted against KDHE only. The claims challenging the regulations are asserted only against the Secretary of Agriculture. We consider all the claims in turn.
 
 A. Property Interest
 
 21
 In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege both the deprivation of a federal right and that the actor was operating under state law.[7] Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth., 933 F.2d 853, 857 (10th Cir.1991). It is undisputed that Stanley C. Grant and KDHE were acting under color of state law when they decided not to renew the contract. The focus of this lawsuit, therefore, is on the determination whether SEK-CAP stated a claim for relief with regard to the alleged constitutional deprivation. In the complaint, SEK-CAP alleges that it was deprived of a federal property right when the state failed to renew its contract to operate the WIC program without a hearing.
 
 
 22
 In order to establish the existence of a property right, however, SEK-CAP must show a "legitimate claim of entitlement" to continued funding and a hearing. See id. at 857; see also Pueblo Neighborhood Health Ctrs., Inc. v. United States Dep't of Health & Human Servs., 720 F.2d 622, 625 (10th Cir.1983) ("Because we find no statutory entitlement we cannot find ... any property interest in a new grant."). Absent this entitlement, SEK-CAP has no due process claim. See Hill v. Ibarra, 954 F.2d 1516, 1524 (10th Cir.1992) (asserted property right never arose because Plaintiff could not show undeniable entitlement under the statute in question).
 
 
 23
 SEK-CAP's vigorous arguments notwithstanding, the language in the contract between it and the state does not provide any entitlement to further funding. By its terms, the contract expired on September 30, 1988. Neither the statute nor the regulations support an argument that SEK-CAP was entitled to funding beyond that date. Because there was no entitlement, there can be no property interest deprivation. See Superior Eng'g & Elecs. Co. v. Sanders, 833 F.2d 823, 826 (9th Cir.1987) ("If the statute creates no claim to future benefits, there is no entitlement to continued benefits.").
 
 
 24
 SEK-CAP further argues that its due process rights were infringed because this was not, in actuality, a nonrenewal, but was a veiled attempt to completely disqualify the corporation from further participation in the program. Cf. J.O.M. Corp. v. Department of Health, 697 F.Supp. 720, 724-25 (S.D.N.Y.1988) (holding that plaintiff had a property interest in WIC program where facts showed state was disqualifying it from program, even though calling it a nonrenewal). This argument relies primarily on 7 C.F.R. § 246.5(e)(3)(ii), which allows for appeal, including a hearing, in the case of disqualification. SEK-CAP contends that a property interest was impaired because "no hearing on the issue of disqualification [was] given." Appellant's Opening Br. at 16.
 
 
 25
 The corporation was not disqualified. The undisputed facts show that the state allowed SEK-CAP, as well as others, to bid on the WIC program. In J.O.M. Corporation, the court defined disqualification as "a disallowance of the vendor's further participation in the program for a period of up to three years." Id. at 723 n. 2. SEK-CAP has not alleged any facts in support of its argument that the state was really trying to disqualify it from the program, nor is there any allegation in the complaint that SEK-CAP is prohibited from bidding for three years. Consequently, the district court's dismissal was appropriate.
 
 B. Liberty Interest
 
 26
 SEK-CAP contends the state violated a liberty interest when it failed to renew the contract. Specifically, the corporation maintains that publication of the monitoring report implicated a liberty interest because the report contained "widely publicized allegations of misspending of federal funds and incompetence." Appellant's Opening Br. at 16. In its complaint, SEK-CAP alleges that the monitoring report formed the basis for the decision not to renew the contract. Appellant's App. at 2-3. The corporation contends it was entitled to a name-clearing hearing to defend against the allegations made in the monitoring report.
 
 
 27
 Even assuming, arguendo, that SEK-CAP may, as a corporation, suffer damage to its reputation sufficient to trigger a liberty interest, a showing of stigmatization is essential to stating the liberty interest claim. See Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); see also Melton v. City of Okla. City, 928 F.2d 920, 927 (10th Cir.) (claim for relief is stated when public employer terminates employee based on "unfounded charges of dishonesty ... that might seriously damage the employee's standing or associations ... and foreclose ... freedom to take advantage of future employment opportunities"), cert. denied, --- U.S. ----, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991). The issue whether the alleged governmental action is stigmatizing is a question of law. See Melton, 928 F.2d at 928 ("We therefore ... make an independent review of the record on the dispositive constitutional issue."); see also Roth, 408 U.S. at 574 n. 13, 92 S.Ct. at 2707 (court determined that nonretention alone does not amount to a deprivation of liberty).
 
 
 28
 We have carefully reviewed the monitoring report and conclude it is not stigmatizing. At best, the report contains charges involving negligence and neglect of duties. While under the right circumstances these claims could give rise to a state law defamation claim, they are insufficient to establish a liberty interest deprivation. See Conaway v. Smith, 853 F.2d 789, 794 (10th Cir.1988); Sullivan v. Stark, 808 F.2d 737, 739 (10th Cir.1987). Because SEK-CAP cannot prove this essential element, it has not stated a claim for relief and dismissal was appropriate.
 
 C. Challenge to the Regulations
 
 29
 In its final argument, SEK-CAP maintains 1) that KDHE violated federal regulations when it failed to give SEK-CAP reasons for the nonrenewal and 2) that the regulations which Secretary Lyng promulgated with respect to the ability of local agencies to obtain a hearing upon nonrenewal are inconsistent with the Child Nutrition Act.[8] We hold the district court properly dismissed these claims, as well.[9]
 
 1. Explanation for Nonrenewal
 
 30
 On July 28, 1988, KDHE drafted and forwarded a letter to SEK-CAP which informed it that the contract to operate the WIC program would not be renewed. The letter did not provide reasons for the nonrenewal. As stated, the complaint alleges that the decision was based on the results of the monitoring report. SEK-CAP maintains that the regulations governing the Child Nutrition Act required the government to provide reasons for the nonrenewal.
 
 
 31
 The regulation governing the government's duties in the event of nonrenewal is 7 C.F.R. § 246.6(a). It states, "[t]he expiration of an agreement is not subject to appeal. The State agency shall provide local agencies with advance written notice of the expiration of an agreement as required under §§ 246.5(e)(3)(ii) and 246.18(b)(1)." As written, the regulation does not require a state agency to provide reasons for a nonrenewal.
 
 
 32
 In § 246.5(e)(3)(ii), however, which is identified in the regulation quoted above, there is language indicating that when a local agency is being disqualified, written explanation of the reasons for nonrenewal must be given. Disqualification occurs when a local agency is prohibited from participating in the program. See 7 C.F.R. § 246.2. SEK-CAP maintains that this regulation, as incorporated in 7 C.F.R. § 246.6(a), was violated when KDHE did not provide reasons for the nonrenewal. We disagree.
 
 
 33
 SEK-CAP was not prohibited from participating in the WIC program. Indeed, it was allowed to submit a bid to renew this contract. Thus, it was not disqualified. Consequently, it was not necessary for KDHE to provide reasons for the nonrenewal.
 
 2. Validity of the Regulations
 
 34
 SEK-CAP maintains that the regulations which the Secretary of Agriculture implemented to govern the WIC program are contrary to the intent of the Child Nutrition Act. In particular, SEK-CAP argues that the language found in 42 U.S.C. § 1786(f)(9)(A) mandates that KDHE grant it a hearing on the nonrenewal. That provision states "[t]he State agency shall grant a fair hearing, and a prompt determination thereafter, in accordance with regulations issued by the Secretary, to any applicant, participant, or local agency aggrieved by the action of a State or local agency as it affects participation." As stated previously, however, the regulations do not provide for a hearing in the event of nonrenewal.[10] See 7 C.F.R. § 246.6.
 
 
 35
 The Child Nutrition Act gives the Secretary of Agriculture the authority to promulgate regulations to govern implementation of the WIC program. See 42 U.S.C. § 1779. "When Congress explicitly or implicitly delegates to agencies the power to elucidate a specific provision of a statute, the resulting agency action is entitled to deference." Lyng, 758 F.Supp. at 1436 (citing Hecla Mining Co. v. United States, 909 F.2d 1371, 1375 (10th Cir.1990)). The regulations which the Secretary promulgated must be given deference. Hecla Mining, 909 F.2d at 1375; see also Superior Eng'g & Elecs. Co., 833 F.2d at 827 (review of regulation is limited to determining whether it is reasonably related to achieving a permissible objective).
 
 
 36
 Further, "[a]ny ambiguity in [this statute] is for the Secretary to resolve." Rose Acre Farms, Inc. v. Madigan, 956 F.2d 670, 675 (7th Cir.1992) (evaluating Secretary of Agriculture's regulations under Title 21), petition for cert. filed, No. 91-1879 (U.S. May 22, 1992). The power to implement regulations necessarily involves the power to interpret the statute. See id. Thus, we must give deference to the Secretary's interpretation of the statute as manifested in the regulations.
 
 
 37
 SEK-CAP's argument derives from a change in the regulations made in 1983. Prior to that time, the regulations provided for a hearing in the event of nonrenewal. On July 8, 1983, the Department of Agriculture proposed regulations to eliminate the hearing. The purpose of the change was described as follows:
 
 
 38
 The current regulations provide that any ... vendor or local agency adversely affected by a State decision is entitled to an impartial administrative appeal. Further, the adverse action must be postponed until the hearing decision is rendered. However, the delay of the adverse action until the hearing decision has been rendered may hamper the State agency's ability to deal effectively with abusive vendors or poorly managed local agencies. This, in turn, can lead to loss of Program funds.
 
 
 39
 Therefore, the Department is proposing in paragraph (a)(1) that nonrenewal of a food vendor's or local agency's agreement not be subject to appeal. Aside from management consideration, appeal of nonrenewal is inappropriate since both parties to the contract have freely agreed upon an expiration date.
 
 
 40
 48 Fed.Reg. 31,510 (1983). The district court found this change was consistent with the statute and was not "coercive, unfair, or contrary to Congressional intent." Lyng, 758 F.Supp. at 1436. In light of the great deference afforded the Secretary's interpretation of the statute through the regulations, we agree with the district court that the change is not inconsistent with the statute.
 
 
 41
 The judgment of the United States District Court for the District of Kansas is AFFIRMED.
 
 
 
 *
 Honorable David Sam, District Judge, United States District Court for the District of Utah, sitting by designation
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 The record does not indicate which local agency is currently operating the WIC program
 
 
 [3]
 The contract between these parties was for an amount over $10,000. Therefore, our inquiry is limited to determining whether the request constitutes "monetary relief."
 
 
 [4]
 The immunity waiver found in the APA does not provide an independent grant of subject matter jurisdiction. See Califano v. Sanders, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977). Subject matter jurisdiction to review agency action is, therefore, found in 28 U.S.C. § 1331 unless some other statute, such as the Tucker Act, mandates exclusive jurisdiction. Hamilton Stores, Inc. v. Hodel, 925 F.2d 1272, 1277 (10th Cir.1991)
 
 
 [5]
 This waiver of immunity does not extend to actions founded on a contract with the United States. Eagle-Picher, 901 F.2d at 1532 and n. 1. In those cases, the Tucker Act controls and the Claims Court maintains exclusive jurisdiction. Id. at 1532. The parties to the contract in this case were KDHE and SEK-CAP. The contract did not identify the Secretary as a party. Therefore, the Tucker Act does not dictate Claims Court jurisdiction
 
 
 [6]
 This lawsuit was filed against Stanley C. Grant as Secretary of KDHE in his official capacity only. Consequently, the Eleventh Amendment bars the award of money damages. See Papasan v. Allain, 478 U.S. 265, 276-79, 106 S.Ct. 2932, 2939-2941, 92 L.Ed.2d 209 (1986); Quern v. Jordan, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); see also Hafer v. Melo, --- U.S. ----, 112 S.Ct. 358, 364, 116 L.Ed.2d 301 (1991) (Eleventh Amendment bars suits seeking to impose a liability which would be paid from federal funds). The Amendment does not bar the action altogether, however, as it does allow suits seeking prospective injunctive relief. Quern, 440 U.S. at 337, 99 S.Ct. at 1143. SEK-CAP's request for money damages is barred. Therefore, we consider only the request for prospective injunctive relief
 
 
 [7]
 Although not identified as such in the complaint, SEK-CAP admits in its appellate brief that its due process claims are made pursuant to 42 U.S.C. § 1983. See Appellant's Opening Br. at 15
 
 
 [8]
 On appeal, SEK-CAP has abandoned its argument that the priority system used for selecting new agencies is not authorized by the Child Nutrition Act. See Appellant's Opening Br. at 7
 
 
 [9]
 If the regulations are invalid as applied to SEK-CAP, the corporation has made a showing of injury in fact. Thus, it has standing to challenge them. See Southern Mut. Help Ass'n v. Califano, 574 F.2d 518, 522-25 (D.C.Cir.1977)
 
 
 [10]
 The Child Nutrition Act does not define the term "aggrieved party." The APA identifies an aggrieved party as one who "alleges that he has or will sustain some actual or threatened injury in fact resulting from the challenged agency action and the alleged injury was to an interest arguably within the zone of interests protected or regulated by the statute in question." Hartigan v. Federal Home Loan Bank Bd., 746 F.2d 1300, 1307 (7th Cir.1984)